# GEORGE SEIDENSPARGER & *al. vs.* ROBERT SPEAR, JR.

In a complaint against the owner of a mill-dam for flowing land of the complainant, proof of the uninterrupted flowing for any term of time by the respondent and his grantors, claiming the right, is not sufficient evidence for the jury to presume the existence of a permanent right to flow the land without the payment of damages.

The right to overflow the land of the complainant without paying damages, cannot be established by proof of a parol agreement or license made with his grantors.

In the trial of a complaint for flowing, if the respondent denies the title of the complainant to the land alleged to have been damaged by the flowing, or claims the right to flow without payment of damages or for an agreed composition, and it is proved that the land of the complainant is overflowed by the mill-dam, some damages are to be presumed; and the jury or committee to be afterwards appointed are to estimate the amount of damage, or to ascertain whether damage had or had not in fact been sustained.

Where boundaries, length of lines and points of compass are all given in a deed, and the first named monument cannot be found, but the others are ascertained; the first monument may be ascertained, in the absence of all other testimony, by beginning at the second monument and running back the number of rods mentioned in the deed in the direction there given.

EXCEPTIONS from the Court of Common Pleas, SMITH J. presiding.

This was a complaint for flowing the land of the complainants. By brief statement, the defendant denied the title of the complainants to the land flowed, and alleged that the defendant, and those under whom he claimed, had a license to flow without paying damage, and that the title to the land flowed was in the defendant.

The complainants derived title from *John Seidensparger*, by deed, of which the substance is given in the opinion of the Court. The defendant proved by parol, that *Prior*, the grantor of *Henry Fogler*, and also *Fogler*, the grantor of *John Seidensparger*, during the time they owned the land, severally acknowledged that the grantors of the defendant had a right to flow without paying damages; that the defendant and his grantors claimed the right to flow without payment of damages; that when *Fogler* conveyed to *John Seidensparger*, he reserved by parol the right of the grantors of the defendant to flow the land without the payment of damages. There was however evidence tending to disprove the parol reservation. The defendant offered to prove, that for more than fifty years, the defendant and those under whom he claimed, had maintained the dam, which caused the flowing, at its present height, and claimed the right to flow and had flowed without paying damages, as evidence for the jury to presume a license to flow without paying damages. He also offered to prove that the complainants sustained no damage by the flowing. The other facts sufficiently appear in the opinion of the Court. The Judge ruled, that the uninterrupted flowing for any length of time, with the claim of the right, was not evidence sufficient for the jury to presume a license to flow without paying damages. He also overruled the motion to prove that the flowing was no damage, and ruled, that if the land of the complainants was proved to have been flowed by the defendants' mill-dam, some damages would be presumed, and the jury or committee to be afterwards appointed, were to estimate the amount of damages, or to ascertain whether in fact there were any or not. The Judge also ruled, that a right to overflow the complainants' land, derived from the complainants' grantors, could not be established by proving a parol agreement, so as to affect the title of the present complainants. With respect to the deed of *Fogler* to *Seidensparger*, the Judge instructed the jury, that if there was no known monument at the place of beginning, that then they might go to the end of the first line and at the monument of the line at the end of the same, and beginning at that monument they might run back the number of rods mentioned in the deed, and thus determine the place of beginning; and that in the absence of all other testimony that then the length of the line would be the best evidence to ascertain the

boundary, and would show where the same was. The jury returned a verdict for the complainants, and that they found the length of the first line mentioned in the deed by beginning at the second boundary mentioned and running back the number of rods given in the deed to find the boundary first mentioned. The respondent filed exceptions.

*Bulfinch,* for the respondent, argued in support of the five objections stated in the commencement of the opinion of the Court ; and cited *Dane's Ab. c.* 109, *art.* 10, § 11 ; *Lapish* v. *Wells,* 6 *Greenl.* 175 ; *Schwartz* v. *Kuhn,* 1 *Fairf.* 274 ; 3 *Johns. R.* 383 ; *Dane, c.* 101, *art.* 5, § 24, 27 ; 16 *Johns. R.* 172 ; *Davis* v. *Rainsford,* 17 *Mass. R.* 207 ; *Hathorne* v. *Stinson,* 1 *Fairf.* 224 ; *same case,* 3 *Fairf.* 183.

*M. H. Smith,* for the complainants, contended : —

1. That the uninterrupted flowing for any length of time by the respondent and his grantors, and their claiming the right, was not evidence sufficient for the jury to presume a license to flow from the complainants and their grantors, without paying damage, so as to give the respondent a permanent right. *Tinkham* v. *Arnold,* 3 *Greenl.* 120. The cases *Hathorne* v. *Stinson,* 1 and 3 *Fairf.* were examined by the counsel, and the conclusion drawn, that they were not intended to overrule or impeach the case of *Tinkham* v. *Arnold.*

2. That the right to overflow the land of the complainants without paying damages, could not be established by proving a parol agreement made with the complainants' grantors. *Angell on Water Courses, c.* 4 & 6, and cases there cited ; *Cook* v. *Stearns,* 11 *Mass. R.* 537 ; *Ricker* v. *Kelley,* 1 *Greenl.* 117 ; 4 *East,* 107 ; *Stowell* v. *Flagg,* 11 *Mass. R.* 364 ; *Clement* v. *Durgin,* 5 *Greenl.* 9 ; 6 *East,* 602 ; 2 *Rolle,* 152 ; 3 *Kent,* 452 ; 2 *Saund.* 175, *note ;* 7 *Taunt.* 374 ; 4 *Johns. R.* 81 ; 6 *Mod.* 171 ; *Angell on W. C.* 43 ; *Jacob's Law Dic. License ;* 2 *Nelson's Abr.* 1123 ; *Popham's Rep.* 151 ; *Wood* v. *Lake, Sayer,* 3. At the close of the argument on this point, it was insisted, that the following grounds were established. 1. A permanent right to flow the land of another without payment of damage, can be created only by deed or instrument in writing. 2. A parol license of this kind is revocable. 3. The transfer of the land by deed without reserva-

tion is a revocation.   4. The license is not assignable.   5. It is a parol license not to be performed within the space of one year. 6. There was no consideration shown.

3. That the flowing of the cultivated land of the complainants by the respondent's mill-dam, was evidence sufficient for the jury to presume some damage ; and witnesses should not be admitted to prove that in their opinion, there was no damage.   *Prov. St. Mills* of 1713 ; *Mass. stat.* on the same subject, 1795 & 1798 ; *Sullivan on Land Titles,* 277 ; *Lowell* v. *Spring,* 6 *Mass. R.* 398 ; *stat.* 1821, *c.* 45 ; *stat.* 1824, *c.* 261 ;· *Axtell* v. *Coombs,* 4 *Greenl.* 322 ; 6 *Modern,* 89 ; 6 *Cowen,* 35 ; 3 *Fairf.* 346. The respondent cannot set up any defence not embraced in the brief statement, unless it can be given in evidence under the general issue.

4. The instructions of the Judge to the jury, relative to the mode of ascertaining the extent and position of the boundaries described in the deed were correct.

The opinion of the Court, after several continuances, was by

·EMERY J. — The defendant professes to be dissatisfied, because the attention of the jury was drawn by the Judge in his instructions to one line only in the deed, and not to the entire deed, and not to the intentions of the parties to the deed under which the complainants claim.   Because the instructions invaded the province of the jury in directing them how to find the place of beginning, when that fact should have been exclusively submitted to them, and of which they were the sole and independent judges. Because if the flowing was no damage, then this process does not lie.   Because if there has been an uninterrupted flowing and damage for fifty years, it was evidence, which should have been submitted to the jury, as evidence of a license to flow without paying damages.   And that it would be absurd to suppose that a grant of a license to flow, when the flowing was a continued damage for fifty years without interruption, is not to be submitted to the jury, when a possession of the land for a much shorter time would be evidence of a grant of the land itself.

We do not discover any good cause for the defendant's dissatisfaction with the instruction of the Judge as to the construction of

the deed of *Fogler* to *Seidensparger.* If we admit the justice of the remark by the defendant's counsel, that in some sense, " one line in a deed is as important as another, and as good evidence as another," yet it does become peculiarly the duty of the Court to suggest to juries such legal modes for ascertaining boundaries in deeds, as have met the approbation of judicial tribunals. The deed, which was dated *April* 13, 1801, described the land in *Warren*, beginning at a stake and stones on the land of *Robert Spear*, thence running westerly one hundred and ten poles to a stake and stones, thence running southerly thirty-six poles to a stake and stones, thence running easterly, one hundred poles to the first mentioned bounds, containing ten acres, be the same more or less. It is a deed with general warranty. The Judge said, if there was no known monument at the place of beginning, that then they might go to the end of the first line, which we infer to be in the line of *Spear's* land, and at the monument of the line at the end of the same, and beginning at that monument, they might run back the number of rods mentioned in the deed and thus determine the place of beginning. And in the absence of all other testimony, that then the length of the line would be the best evidence to ascertain the boundary, and would show where the same was. We see no danger of the jurors being led to a wrong conclusion by this suggestion of the Judge. It was a very natural and judicious one, and was as well calculated to elicit the truth as the nature of the subject would admit. There was no invasion of the province of the jury. It was merely presenting to their contemplation the means by which their province could be best evinced, to settle the true extent of the line, as the first stake and stones on *Robert Spear's* land were not then to be found by any testimony in the case, but the next monument named was well known. From that, they were directed to measure back the one hundred and ten poles, and we do not think that they or the Judge erred in resorting to this expedient.

The Judge ruled, that the uninterrupted flowing for any length of time, and the defendant and his grantors claiming the right, was not evidence sufficient for the jury to presume a license to flow by the defendant without paying damages.

In the year 1824 the case of *Tinkham* v. *Arnold* was decided; and it was held that the omission to claim damages furnished no presumptive evidence of a grant of the easement in question, when by law such grant was not necessary, and when the conduct of all concerned was explainable on legal ground without such presumption. This warrants the ruling of the Judge in this particular. He also ruled, that a right to overflow the complainants' land, derived from the complainants' grantors, could not be established by proving a parol agreement so as to affect the present title of the complainants. After a lapse of nearly eleven years from the decision of *Tinkham* v. *Arnold,* in the case of *Hathorne* v. *Stinson & al.* 3 *Fairf.* 183, it was said, " generally when one encroaches upon the inheritance of another, the law gives a right of action, and even if no actual damages are found, the action will be sustained, and nominal damages recovered, because unless that could be done, the encroachments acquiesced in, might ripen into legal right, and the trespasser, by a continuance of his encroachments, acquire a perfect title."  " But in the case of flowing, the owner of the land flowed can maintain no process, unless he has sustained damages in his lands by their being flowed.  The common law remedy is taken away and the only remedy for redress is by this process of complaint.  The owner's hands are tied.  The flowing may continue without license, till damage is suffered."

Under these circumstances it would seem to be imperiously required of courts of justice not to relax the rules of law as to the effect of licenses by parol, or as to the extent of presumptions against the lawful owner's right.  It is so easy a thing for one, who would secure a right to flow another's land, to obtain a deed conveying that right for such length of time, and to such height and extent as may be agreed upon, that it may be regretted that any dispensation with such a requisition should in any degree, be tolerated, considering the temptations to misrepresent, or to forget what transpired in years gone by, when the whole rests merely in recollection, without being reduced to writing.

It appears, that there was conflicting evidence as to the parol reservation.  But admitting that there was something amounting to a license, when the land was sold by deed to the complainants' grantor, and afterward by that grantor to the complainants, the con-

veyance was a revocation of the license. In *Cook* v. *Stearns*, 11 *Mass. R.* 533, it was held, that if the allegations of a license from former owners were held to be a bar to the action, all the mischiefs and uncertainties which the legislature intended to avoid, requiring such bargains to be put in writing, would be revived, and purchasers of estates would be without the means of knowing whether incumbrances existed or not in the land which they purchase. *Fatiman* v. *Smith*, 4 *East*, 107.

The case of *Clement* v. *Durgin*, 5 *Greenl.* 9, is different from the present. That was between the original parties. No conveyance had been made. We do not think that the decision in *Clement* v. *Durgin* should be construed to go further than to settle the rights between those parties as to the payment of damages, and to persons similarly situated. And by any parol agreement of the complainants' grantors, we are satisfied that the present title of the complainant is not affected.

The Judge also overruled the motion to prove that the flowing was no damage, and that if the land of complainants was proved to have been flowed by defendant's mill-dam, some damages would be presumed, and the jury or committee to be afterwards appointed were to estimate the amount of damage, or to ascertain whether in fact there were any or not.

In this case no damage was sustained till 1835. When the complainants' grantor purchased in 1801, the land was wild and uncultivated; afterward it was fenced and grass cut a number of years. It may be that for some cause the flowing was not till latterly continued through the summer. The meadow of the complainants in *August*, 1835, was overflowed by means of the respondent's mill-dam, as high as it was in *November*. This fact presented a *prima facie* presumption of damage. But it was not requisite to go into this inquiry as it is more particularly to be investigated by the actual inspection of the commissioners to be appointed after the decision of the Court upon the first verdict, if that can be sustained upon the questions now under consideration.

By the *stat.* of 1824, *c.* 261, "if any owner or occupant of a mill, appearing, shall not shew sufficient cause, the court may appoint three or more disinterested freeholders of the same county to make true and faithful appraisement under oath, of the yearly dam-

ages, if any, done to the complainant by flowing his lands, and how far the same may be necessary, and to ascertain and make report what portion of the year such lands ought not to be so flowed. *This report shall*, under the direction of the court, *be given in evidence* to the jury who shall, at the request of either party, be empannelled to try such cause at the bar of said court, subject however to be impeached by evidence from either party. And if neither party request *a trial of such cause by a jury*, at the bar of said Court *for the purpose of impeaching such report*, then said report being accepted by said Court, judgment shall be rendered thereon according to the same. And the verdict of such jury, or the report of said commissioners, in case neither party shall request a trial by jury as aforesaid, shall be a sufficient bar to any action to be brought for such damages; and shall in no manner authorize such owner or occupant to flow such lands during any portion of the period in which said commissioners or jury shall determine that the same ought not to be flowed."

This provision of the statute shews in the clearest manner, that the construction of the Judge was perfectly correct. The design of the statutes on this subject was to authorize the party flowing to avail himself of a denial of the complainants' title to the lands said to be damaged by flowing, or a claim of *right* to flow such lands without payment of damages, or for an *agreed composition*, to be tried by a jury, unless there be an issue in law which the Court shall determine. All this is to be finished before the appointment of commissioners. And none would be appointed, if the complainant failed to establish his title to the land flowed, or if the defendant proved a right to flow without payment of damages or for an agreed composition. *Cowell* v. *The Great Falls Manufacturing Co.*, 6 *Greenl.* 282.

*The exceptions are overruled.*

---

NOTE WITH THE OPINION. It is said, that there is a case *Liggins* v. *Inge*, in 5 *Moore & Payne*, 712, decided I suppose in the Exchequer, in 1827, that a parol license, after it is executed at the expense of the grantee, is not countermandable by the grantor. Where therefore the plaintiff's father gave the defendants leave, by parol, to lower the bank of a river and erect a weir, whereby a part of the water which before flowed to the plaintiff's mill, was diverted : — *Held*, that his son could not maintain an action against the de-

fendants for continuing the weir, although his father, a few years after the license was given, had required them to raise up the bank and pull down the weir.

It has not been in my power to see the case at large. But it does not appear to me to justify a departure from the construction in *Fatiman* v. *Smith,* 4 *East,* 107. The case of the weir was not between a purchaser for a valuable consideration and the person erecting the weir, but between him and the son of the licenser, and the son probably took by descent.