**Lyman CONARY, Raymond Conary, Kent Conary and Wyman Conary**

v.

**George E. PERKINS, Ingrid H. Perkins, Elston Mitchell and Amorette Mitchell.**

Supreme Judicial Court of Maine.

Argued Nov. 10, 1982.

Decided Aug. 31, 1983.

Libhart, Ferris, Dearborn & Willey, N. Laurence Willey, Jr. (orally), Ellsworth, for plaintiffs.

Walker & Ross, Frank B. Walker (orally), Ellsworth, for defendants.

Before McKUSICK, C.J., GODFREY, NICHOLS, ROBERTS, CARTER * and WATHEN, JJ., and DUFRESNE, A.R.J.

DUFRESNE, Active Retired Justice.

The appeal in this case was initially before us on oral argument at the 1982 November session of the Law Court. Due to the absence of a final judgment at that time on account of the pendency of other claims for relief either for or against some of the parties in this action in which multiple parties and multiple claims were involved, the Chief Justice, on November 22, 1982, ordered the case remanded to the Superior Court for disposition of all pending claims or, in the alternative, for compliance with the requirements of Rule 54(b), M.R. Civ.P. All pending claims now having been disposed of, the instant substitute appeal, which reached us in May, 1983, is appropriately before us for decision. The defendants' appeal from the final judgment of the Superior Court is sustained.

### Facts

Wyman Conary, the father of the other plaintiffs, Lyman, Raymond and Kent Conary, prior to 1956 held title in single undivided ownership to property located on the east side of Lower Toddy Pond, in Orland, Maine, property which he subsequently subdivided and conveyed away. The respective deeds to the three shore lots, the Bouchard lot, the Perkins lot and the Mitchell lot, were introduced and received in evidence before the referee appointed to determine only whether the four appellants (the Perkins and the Mitchells) were liable in damages to the four appellees (the Conarys) for trespassing on the Conary property. These deeds are all interrelated and the issue of trespass vel non must necessarily depend on two questions, (1) what are the boundaries of the respective lots and (2) where are those boundaries on the face of the earth.

The Bouchard lot, the most southerly lot of the three, was the first which Mr. Conary sold out on May 28, 1956, and was described as follows, the underscored portion thereof being the pertinent part for our present purposes:

> On the Easterly side of Toddy Pond, so-called, and beginning at the shore of said pond at the northerly edge of Muskrat Cove, so-called, at an iron pin in a large boulder; thence in an easterly direction 100 feet more or less, to an iron pin in a large boulder; thence Southerly at right angles 300 feet, more or less, to an iron pin in a large boulder; thence Westerly and parallel to the first line 100 feet, more or less, to said pond; thence northerly by said pond 300 feet more or less, to point of beginning.

On June 26, 1957, the Perkins and the Mitchells together were buying the Conary land on the east shore of Toddy Pond between Mr. Conary's northerly line, the

* Carter, J., sat at oral argument and participated in the initial conference but resigned before this opinion was adopted.

Hutchins line so-called, and the northerly line of the Bouchard lot, with the understanding between them and Mr. Conary that Mr. Conary's lawyer would split the lot in half and draft two separate deeds, the Perkins and the Mitchells having settled by a flip of the coin that the northerly half would be deeded to the Mitchells and the southerly half to the Perkins. Thus, the Perkins lot, for our purposes, is the middle lot in the scenario of the instant action, and is the lot which was involved in a previous suit between Mr. Conary and the Perkins entitled *Perkins v. Conary*, 295 A.2d 644 (Me.1972). The Perkins lot or middle lot was described as follows, with the underscored portion thereof being the pertinent part for our present purposes:

> On the easterly side of Lower Toddy Pond, so-called, and beginning at the northeasterly corner of land of Wilbrod Bouchard; thence westerly by said Bouchard land and an extension of his line to said pond; thence northerly by said pond about 100 feet to an iron rod; *thence easterly and parallel to the first described line about 150 feet to an iron rod; thence southerly at right angles to point of beginning.*

The Mitchell lot, the most northerly lot of the three, and the one actually involved in the instant dispute, was described as follows, with the underscored portion thereof being the pertinent part for our present purposes:

> On the easterly side of Lower Toddy Pond, so-called, and beginning at the northwesterly corner of land of George Perkins et ux at said pond; thence easterly by said Perkins land 150 feet, more or less, to Perkins' northeasterly corner; thence northerly at right angles 100 feet, more or less, to land of Levi Hutchins; thence westerly by said Hutchins land 150 feet, more or less, to said pond; thence southerly by said pond to point of beginning.

The Mitchell lot was later acquired by the Perkins after the alleged trespass took place, but we will maintain our reference to that lot under the label, the Mitchell lot.

Mr. Conary, except for the reservation of a life estate, had already parted with the fee in the remainder of his property at Toddy Pond in favor of his three sons, when the trespass about which the Conarys complain happened. This consisted in the digging by the defendants of a trench and a well, and the setting of a pipeline, on and across land claimed by the Mitchells as the rear portion of the Mitchell lot on the basis that the easterly line of their lot was an extension northward of Perkins' middle lot easterly line, forming at Perkins' northeasterly corner of that lot a 90° angle with Perkins' northerly line. The Conary entitlement to the land in question was grounded on the claim that the establishment in the previous *Perkins* court decision under the Sherwood J. Tuell survey of the northeasterly corner of the Bouchard lot at the present most easterly iron pin in a large boulder on the northerly line of the Bouchard lot was in error and the result of a fraudulent displacement of a missing original third iron pin located some sixty-five (65) feet westerly of that current most easterly pin; that, by reason thereof, Perkins' northeasterly corner of the middle lot was also some sixty-five (65) feet more to the west, thus establishing the easterly line of the Mitchell lot westerly of the disputed land.

### The judgment

Prior to the hearing on damages for the alleged trespass, George Perkins, one of the defendants, concededly had dumped the debris from a burnt building onto the disputed land in apparent violation of a preliminary injunction issued by the Superior Court on June 7, 1979. The referee's report to the court was filed October 30, 1979. Written objections to the report were seasonably filed November 9, 1979, but, on January 28, 1980, the Superior Court adopted the referee's report and ordered partial judgment on liability. On March 17, 1981, a complaint was filed against George Perkins for him to show cause why he should not be adjudged

guilty of contempt on account of the dumping incident. The ultimate judgment of the Superior Court involved in this appeal, after hearing on damages and on the motion for contempt, reads in pertinent part as follows:

> Judgment is entered for the Plaintiffs as against Defendants George Perkins, Ingrid Perkins, Alston (sic) Mitchell and Amorette Mitchell for Compensatory damages to the date of the referee's report in the amount of two hundred dollars with costs.
>
> On the motion for contempt plaintiffs are awarded damages as against George Perkins only in the amount of thirty-six hundred dollars (constituting treble damages) with attorneys fees of five hundred dollars and the costs of hearing on the motion.

### Discussion of the applicable law

■ The key witness supporting the Conary theory was surveyor Andrew J. Shyka, whose survey the referee accepted as against that of surveyor Tuell, the supporting survey in the previous *Perkins* court decision. The referee had to determine at the outset what the boundaries of the Mitchell lot were according to the description in the Mitchell deed. What the boundaries are, as ascertained from the language of a deed, is a question of law; where these boundaries are on the face of the earth is a question of fact. *Perkins v. Conary,* 295 A.2d 644, 647 (Me.1972); *Proctor v. Hinkley,* 462 A.2d 465, 469 (Me.1983).

■ In determining what the boundaries are, a surveyor may not rest his judgment on what he thinks the intention of the parties may have been contrary to certain accepted positive rules of law which control and which parties to real estate transactions must heed, if they would effectuate their intent and avoid consequences they did not intend. *Perkins v. Conary, supra,* 295 A.2d at 646. It is a rule of general acceptance in real estate conveyancing that boundaries be established *in descending order of control* by monuments, courses, distances and quantity. *Id.* at 646. *Mayer v. Fuller,* 248 A.2d 140, 141 (Me.1968).

■ It was essential in establishing the southerly and easterly lines of the Mitchell lot that the northerly line and the northeasterly corner of the Perkins or middle lot be ascertained and delineated on the face of the earth. Indeed, the Mitchell deed, after establishing the starting point of the description of this northerly lot at the northwesterly corner of land of George Perkins and his wife on the east side of Lower Toddy Pond, a point nobody disputes, called for the following three boundaries:

(1) thence easterly by said Perkins land 150 feet, more or less, to Perkins' northeasterly corner;

(2) thence northerly at right angles 100 feet, more or less, to land of Levi Hutchins;

(3) thence westerly by said Hutchins land 150 feet, more or less, to said pond.

In his testimony, the plaintiffs' surveyor, Mr. Shyka, did accept the northerly line of the Perkins or middle lot as established by the previous court decision in *Perkins v. Conary* as the southerly line of the Mitchell lot but rejected the court's decision respecting Perkins' northeasterly corner, and ran that line exactly 150 feet only; he then disregarded the right angle course northerly called for in the deed, and delineated a boundary which reached a point on the Hutchins line exactly 150 feet easterly of the pond. In this, he was in error. The court decision in *Perkins v. Conary* settled the location of the northeasterly corner of the Perkins or middle lot and was binding on Mr. Conary and his sons, who were in privity with him, and this, not only insofar as the Perkins lot is concerned, but also in relation to the Mitchell lot, the southeasterly corner of which Mr. Conary in the Mitchell deed placed at the northeasterly corner of the Perkins lot.

■ True, the defense of res judicata or, in the alternative, collateral estoppel, which the decision in *Perkins v. Conary* would support, was not raised by the plead-

ings and ordinarily would be considered waived. *See Reed v. Tracy,* 435 A.2d 745, 746 (Me.1981). But, under Rule 15(b), M.R. Civ.P., waiver is not available to the plaintiffs in this instance as that issue, *i.e.* the location of that particular corner as established in the case of *Perkins v. Conary,* was tried by implied consent.[1] Indeed, the transcript of the trial in *Perkins v. Conary,* was specifically introduced and received in evidence without objections and without limitations, and was considered by the referee.

■ In his testimony, Mr. Shyka also disregarded the rule announced in *Mayer v. Fuller, supra,* that boundaries must be established in descending order of control by monuments, courses, distances and quantity. It is apparent from his explanations at trial that when the application of this rule brought about what he felt was an unacceptable variance from the stated distances in the deed, he would give precedence to distances over monuments or courses. In this, he was in error, and, by so doing in this case, *i.e.* by rejecting the northeasterly corner of the Perkins lot as established by a previous court decision as a monument and by ignoring the stated at-right-angles-northerly course for the easterly line of the Mitchell lot, the surveyor was proceeding on the assumption that the terms of the deed were incorrect and he in fact was reforming the Mitchell deed. In the absence of reformation, the referee had to apply the terms of the description as they appeared in the deed. *Proctor v. Hinckley, supra,* 462 A.2d at 470.

The interrelationship between the three deeds, the Bouchard deed, the Perkins deed and the Mitchell deed from their internal construction definitely shows an intent on the part of Mr. Conary, the seller, to part with three pieces of adjacent land on the east shore of Lower Toddy Pond of which the easterly line respectively would constitute one single straight line. There was nothing in any of those deeds to indicate that the use of the expression at right angles did not mean at a ninety degree turn, nor that the term parallel was incorrectly used. The referee's acceptance of the Shyka survey was unfortunate and tainted his conclusions of law and fact. The court's adoption of the referee's report carried the error to judgment.

The entry will be:

Appeal of the four defendants respecting the judgment for compensatory damages is sustained and the case is remanded to the Superior Court for vacation of said judgment and entry of judgment in favor of the defendants thereon and for their costs.

Appeal of George E. Perkins from the judgment for the plaintiffs against him in damages in the amount of $3600.00 with attorneys fees of $500.00 and costs is sustained and said judgment is vacated; the case is remanded to the Superior Court for further consideration in the light of the decision herein.

All concurring.

---

1. Rule 15(b), in relevant part, provides as follows:

 When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues . . . .