**FIRST HARTFORD CORP., et al.**

v.

**KENNEBEC WATER DISTRICT.**

Supreme Judicial Court of Maine.

Argued Jan. 24, 1985.

Decided April 18, 1985.

Amerling & Burns, David P. Ray, (orally) Joanne F. Cole, W. John Amerling, Portland, Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Robert G. Fuller, Jr., Augusta, for plaintiff.

Weeks, Hutchins, Frye, Welch & O'Donnell, Miles P. Frye (orally), Waterville, for defendant.

Before ROBERTS, VIOLETTE, WATHEN, GLASSMAN and SCOLNIK, JJ.

VIOLETTE, Justice.

Kennebec Water District (District) appeals from a judgment of the Superior Court, Kennebec County, in favor of First Hartford and Central Maine Power (CMP) and against the District. The Court determined that First Hartford had ownership rights in a dam over the Messalonsksee Stream and that these rights were not conveyed in a 1958 deed from Wyandotte Worsted Company (Wyandotte), a predecessor in title to First Hartford, to Kingsbury Mills, Inc., a predecessor in title to the District.

In 1923, Wyandotte had a mill on Messalonskee Stream in Waterville and owned the land supporting the southeasterly half of the mill privilege, a dam and related structures. A mill privilege is the ability of a stream bank to accommodate a dam. The District owned the southwesterly half of this mill privilege. These privileges are designated as the lower privilege. The District also owned both sides of the stream a short distance upstream that was usable as another mill privilege and at which there was a dam and other structures, designated as the upper privilege.

On August 21, 1923, these parties entered into a Tri-Party Agreement (Agreement) with CMP for the establishment of a dam on the lower privilege. The Agreement states that the contract may be terminated November 1, 1963 by the District or CMP giving the other party notice in writing to that effect at least six months prior thereto, otherwise the contract may continue for an additional term of thirty-five years, but during such additional term it may be terminated by the District or CMP giving the other parties notice in writing at least six months in advance of the date of proposed termination set forth in the notice. The Agreement is still in effect. CMP agreed to erect a new dam on the lower privilege with a head that would flow out the upper privilege. CMP agreed to construct and operate the necessary power station and structures to produce electricity at the site.

Under the Agreement, Wyandotte leased to CMP the southeasterly half of the lower privilege, referred to it in this opinion as its dam privilege; granted to CMP during the term of the Agreement the right to flow its riparian lands and all other flowage rights; leased sufficient right of way to accommodate the project; and made covenants for the operation and termination of the project. In return Wyandotte received a right to electric energy for the life of the Agreement at either or both of its mills at current rates with a deduction each month of over 42000 kilowatt hours and water by gravity from the stream through a pipe up to 6 inches in diameter for the necessary manufacturing purposes of its mill on the stream. The Agreement also re-arranged the water rights on the lower and upper privileges to accommodate the altered use of the two water power sites. Finally, paragraph 10 of the Agreement stated that at the termination or expiration of the contract, the lower privilege would become the property of the District and Wyandotte and be allotted and owned in the proportion of

four twenty-seconds (4/22) to Wyandotte and eighteen twenty-seconds (18/22) to the District, unless Wyandotte exercised an option not to acquire its proportionate part of the property. CMP paid eighteen thousand dollars ($18000) to the District for its rights.

On November 20, 1958, Wyandotte conveyed by quit-claim deed (1958 deed) to Kingsbury Mills the mill on the stream and a certain lot or parcel of land with the buildings thereon "including such rights as the grantor can transfer to have water from said stream furnished by CMP by gravity flow, through a pipe not exceeding six inches in diameter" during the term of a Tri-party Agreement and specifically excluding the right to be furnished electric energy by CMP under the Tri-party Agreement. The purchase price of this conveyance was three thousand dollars ($3000). The 1958 deed also contained a habendum clause which conveyed the property "together with all privileges and appurtenances". The deed, however, made no specific reference to Wyandotte's rights in the dam privilege under the Agreement.

In 1977, Kingsbury Mills conveyed the same interest it had received from Wyandotte to the District. Subsequently, Wyandotte closed its mill operations in Waterville and has contracted to sell its interests under the Tri-party Agreement to CMP.

On February 15, 1983, First Hartford (successor to Wyandotte), CMP and the District filed a complaint seeking a determination of their respective rights in and to the dam on Messalonskee Stream. The complaint was amended in April of 1983. The case was submitted to the court upon an agreed statement of facts. On August 22, 1984, the Superior Court, Kennebec County, issued a decision and order declaring that First Hartford had ownership rights under the Tri-party Agreement in the dam. The District appealed from this decision.

■ The sole issue in this case is whether the 1958 deed to Kingsbury Mills, the District's predecessor in title, conveyed Wyandotte's interest in the dam privilege leased to CMP under the Agreement. The construction of a deed is a question of law for the court. *Reed v. A.C. McLoon & Co.,* 311 A.2d 548, 551 (Me.1973); *C Company v. City of Westbrook,* 269 A.2d 307, 309 (Me.1970). The cardinal rule for interpretation of deeds is the intention of the parties as expressed in the instrument. *Cushing v. State,* 434 A.2d 486, 494 (Me.1981); *Sargent v. Coolidge,* 399 A.2d 1333, 1345 (Me. 1979) appeal after remand 433 A.2d 738 (Me.1981). If the language of the deed is ambiguous, and the intention of the parties is in doubt, the court may then resort to rules of construction and may examine the deed in light of extrinsic circumstances surrounding its execution. *Cushing v. State,* 434 A.2d at 494.

To resolve the intention of the parties requires consideration of the language in the 1958 deed and the agreed upon statement of fact which includes the 1923 Tri-Party Agreement.

■ The Tri-party Agreement clearly separates Wyandotte's dam privilege from its mill interest by joining that privilege with the District's dam privilege, leasing the two privileges to CMP and providing for a specific disposition of the privilege at the end of the lease term. When read in conjunction with the Agreement, the 1958 deed evidences an intent by the parties to exclude rather than include the dam privilege in the conveyance. First, the dam interest would not pass as an appurtenance to the mill privilege not only because the dam interest was clearly separated from the mill interest by the Agreement, but also because such an important interest, if meant to be conveyed, would not have been overlooked by the parties. *Bradford v. Cressey,* 45 Me. 9, 14 (1858).

Second, in the 1958 deed, Wyandotte specifically conveyed the right to water under the Agreement to Kingsbury Mills and retained the right to receive electric power under the Agreement. Had Wyandotte intended to convey all its interest in the dam

privilege, it would not have been necessary to specifically convey its water rights under the Agreement to Kingsbury Mills. Finally, the amount of consideration paid for the property evidences an intent to exclude the dam privilege. Kingsbury Mills paid only $3000 for the conveyance in the 1958 deed. The amount of consideration paid more clearly evidences an intent to convey only the mill rather than the mill and the dam privilege. In light of the language of the 1958 deed and the Agreement, we conclude that the parties did not intend to include the dam privilege in the 1958 deed. We find no error of law in the Superior Court's decision.

The entry is:

Judgment affirmed.

All concurring.