Kenneth E. TAYLOR et al.

v.

James H. HANSON et al.

Supreme Judicial Court of Maine.

Argued Jan. 7, 1988.
Decided April 21, 1988.

Paul C. Fournier, Rocheleau, Fournier & Lebel, Lewiston, for plaintiffs.

Roscoe H. Fales (orally), Fales & Fales, Lewiston, for defendants.

Before McKUSICK, C.J., and
NICHOLS, ROBERTS, WATHEN,
GLASSMAN and SCOLNIK, JJ.

GLASSMAN, Justice.

The defendants, James H. and Anne H. Hanson (Hansons), appeal from a judgment of the Superior Court, Androscoggin County, adopting a referee's report fixing the location of the boundary between the Hansons' land and land owned by the plaintiffs, Kenneth H. Taylor, Ruth A. Taylor and Scott E. Taylor (Taylors). The Hansons claim that the referee erred in the interpretation of the controlling deed and was clearly erroneous in finding that the Hansons had failed to prove the boundary by acquiescence. The Taylors cross-appeal contending the court erred in denying their claim for damages, injunctive relief and costs. We affirm the judgment.

I

The Taylors own property in Turner that abuts the disputed southern line of the Hansons' property. The Taylors purchased the property in 1976 from Kenneth Taylor's mother, who had owned it since 1968. The Hansons purchased their property in 1953. In July 1982 the Taylors brought this action pursuant to M.R.Civ.P. 80A seeking declaratory relief as to the disputed boundary, actual and treble trespass damages, a permanent injunction against future trespasses and costs. The Hansons counterclaimed seeking a declaration of title, boundary by acquiescence, trespass damages, injunctive relief, and costs. The case was submitted to a referee pursuant to M.R.Civ.P. 53(b). At the reference, the parties agreed that the Hansons' deed was the controlling deed. The deed reads as follows:

Commencing at the southeasterly corner of Walter McKinney's land at a point on the Turner Road, so-called, thence running westerly along said McKinney's land in a straight line beyond McKin-

ney's line to a stone road,[1] so-called: a distance of about one thousand eight hundred (1,800) feet: thence running southerly along said stone road one hundred (100) feet to a stake and stone: thence running in a line parallel to the first mentioned line to the Turner Road:[2] thence northerly along the line of the Turner Road one hundred (100) feet to the point of beginning.

The parties also agreed on the beginning monument: "the southeasterly corner of Walter McKinney's land at a point on the Turner Road" and on the first call of the deed, "thence running westerly along said McKinney's land in a straight line ... to a stone road...." as establishing the northern boundary of the Hansons' land. Further, the parties agreed on the location on Stone Road of the terminus of the first call and that the angle of Stone Road is S 1° 41' 32" E. The second call, "thence running southerly along said stone road one hundred (100) feet to a stake and stone," forms the western boundary of the Hansons' land. Each party had hired a surveyor who appeared and testified at the hearing. Neither surveyor found a "stake and stone" at the extremity of the 100 foot call.

The Taylors' surveyor established the southwest corner of the Hansons' land at the southerly end of the 100 foot call along Stone Road but the Hansons' surveyor disregarded the 100 foot call and measured 119.76 feet. Both surveyors followed the third call, "thence running in a line parallel to the first mentioned line to the Turner Road." However, because of the difference in the starting points for the third call, there is approximately a 20-foot difference between the contested southern boundary as drawn by the surveyors. The last call states "thence northerly along the Line of the Turner Road one hundred (100) feet to the point of beginning." The Taylors' surveyor found that it was only 82.56 feet along Turner Road to the point of beginning. The Hansons' surveyor, be-

---

1. Presently known as the Stone Road.

2. Stone and Turner Roads no longer form the actual western and eastern boundaries of the Hansons' property. Because these roads remain

the appropriate boundaries for purposes of the surveys, however, we refer to them as the western and eastern boundaries of that land.

cause he had disregarded the distance of the second call on Stone Road, was able to terminate the southerly line of the Hansons' property on Turner Road exactly 100 feet from the point of beginning.

After a full hearing, the referee found, *inter alia*, that the disputed common boundary between the land of the parties was as drawn by the Taylors' surveyor and recommended that judgment be entered for the Taylors in accordance therewith. From the judgment of the Superior Court establishing the common boundary between the land of the parties as recommended by the referee and denying both parties damages, injunctive relief and costs, the Hansons appeal, and the Taylors cross-appeal.

## II

The Hansons first contend that the referee erred in finding the language of the description in the deed to be unambiguous and in failing to find that as of the date of the deed from the original grantor to the Hansons' predecessor grantee their obvious intention was that *exactly* 100 feet on Turner Road and *approximately* 100 feet on Stone Road be conveyed to the grantee. Although we hold that the referee erred in finding the deed to be unambiguous, we find the error harmless under standard rules of construction.

When interpreting a deed, one should first look for the controlling intent of the parties on the face of the deed. *First Hartford Corp. v. Kennebec Water Dist.*, 490 A.2d 1209, 1211 (Me.1985). However, a latent ambiguity can render that intent unclear. A latent ambiguity in a deed is created when, in applying the description to the ground, facts extrinsic to the document controvert or in some way render unclear the deed's apparently unambiguous terms. *See* 6 *Thompson on Real Property*, § 3026 at 469–70 (1962 & Supp.

1981). Here, the referee erred in finding the deed to be unambiguous because the deed calls for western and eastern boundaries of 100 feet each, and for parallel northern and southern boundaries. The western and eastern boundaries, Turner Road and Stone Road, are not parallel on the face of the earth. Accordingly, given the constraints of parallel northern and southern boundaries, measuring 100 feet on Stone Road does not produce 100 feet on Turner Road.

When, as here, a latent ambiguity is created by extrinsic evidence (the angle of Stone Road), it has long been established that a trial court or referee must admit relevant extrinsic evidence to attempt to cure the ambiguity. *See, e.g., Tyler v. Fickett,* 73 Me. 410, 416 (1882) (where latent ambiguity exists "[r]esort must be had to existing circumstances and to the contemporaneous construction put upon the deeds by the parties."); *see also Perreault v. Toussaint,* 419 A.2d 1009, 1011 (Me. 1980) (extrinsic evidence properly admitted only to clarify specifications in deed found insufficient to locate southeastern corner of property); *Greeley v. Weaver,* 13 A. 575, 575–76 (Me.1888) (where calls in deed failed to close property extrinsic evidence properly admitted).

While we agree with the Hansons' claim that the deed contains a latent ambiguity, they take nothing from this argument. The Hansons not only stipulated to the terminus of the first call in the deed and the angle of Stone Road, they offered no probative evidence of the "contemporaneous construction put upon the deeds by the parties." *Tyler v. Fickett,* 73 Me. at 416. There was no evidence that the original parties to the controlling deed [3] intended that 100 feet on Turner Road should control over 100 feet on Stone Road.[4]

---

3. The controlling deed was drawn and originally conveyed in 1921 from George Bouchles to Patrick Collins.

4. While the evidence at reference indicated that Turner Road was a relatively prominent, traveled road, and Stone Road was and is merely an unpaved "woods road," such evidence does not speak to whether 100 feet on Stone Road or 100

feet on Turner Road was intended to control. The only evidence bearing on the intent of the parties, admitted but apparently not considered by the referee, was the surmise of Hanson's surveyor that "a property owner [in 1921] most likely would have considered the Turner Road more valuable," and "probably the intent was 100 feet on the old Turner Road." Even if the

The Hansons also argue that rules of construction favor a finding that 100 feet on Turner Road controls over 100 feet on Stone Road. We disagree. A basic rule of construction used to discern the parties' intent in the conveyancing of real estate is that "boundaries [are] established *in descending order of control* by monuments, courses, distances and quantity." *Conary v. Perkins,* 464 A.2d 972, 975 (Me.1983); *Kinney v. Central Maine Power Co.,* 403 A.2d 346, 350 (Me.1979); *Rusha v. Little,* 309 A.2d 867, 870 (Me.1973). Without any specific evidence that the original parties intended otherwise, and because the results here are not absurd or manifestly inconsistent with the parties' intentions apparent from the face of the deed, the standard rules of construction, when properly applied, will control. *Kinney v. Central Maine Power Co.,* 403 A.2d at 350. *See also Proctor v. Hinkley,* 462 A.2d 465, 472 (Me.1983) (when establishing boundary by line due east from stake has result both absurd and inconsistent with other provisions of deed, term "east" in deed means only "in an easterly direction").

■ Here, the parties agree on both the first call and the angle of the second call along Stone Road. Both parties agree that no controlling monument was found at the southern terminus of the western boundary. Because no monument was found, and because the angle of and course along Stone Road were not in dispute, the referee properly held that the second call should terminate at precisely 100 feet, as called for in the deed. The third call, the disputed southern boundary, runs easterly and terminates on Turner Road. While this call simply runs "to the Turner Road," no terminal monument is needed because the deed determines its course as parallel to the undisputed first call, the Hansons' northern boundary.

The fourth call runs 100 feet along Turner Road to the established monument at the point of beginning, i.e., the "corner of Walter McKinney's land." The Taylors'

surveyor, having properly followed the 100 foot distance along Stone Road for the second call, and drawing the third call easterly to Turner Road parallel to the first call, found only 82.56 feet along Turner Road to the point of beginning. In this instance monuments and courses control distances, and the third call properly terminates at Turner Road leaving only 82.56 feet along Turner Road to close the property by reaching the monument marking the point of beginning. *See, e.g., Conary v. Perkins,* 464 A.2d at 975.

■ The Hansons argue, however, that the referee was under a duty to resolve the ambiguity in the deed by reversing the order of measuring the calls. Doing so would call for exactly 100 feet on Turner Road, rather than 82.56 feet. Without any probative extrinsic evidence that the original parties to the deed intended this, however, standard rules of construction do not require reversing the calls when the typical forward measurement, beginning with the first call, produces no problems unsolvable by the rules of construction themselves.

We have approved a process of locating an ambiguous or unknown starting monument by measuring a known course backward from the terminus of the first call. *Perreault v. Toussaint,* 419 A.2d at 1011; *Williamson v. Gooch,* 103 Me. 402, 403–04, 69 A. 691, 692 (1908); *Seidensparger v. Spear,* 17 Me. 123, 127 (1840). In this case, however, there is no dispute as to the starting monument. Moreover, we have long recognized that harmonizing all the calls in a deed should be a priority in deed interpretation. *Pike v. Munroe,* 36 Me. 309, 315 (1853). The adopted interpretation gives equal weight to and harmonizes all the calls in the deed according to the intention of the parties as construed under the standard rules of construction. *See Kinney v. Central Maine Power Co.,* 403 A.2d at 349.

The Hansons also claim no effort was made to locate Stone Road as it existed in

referee had considered this evidence, it would, as a matter of law, have been insufficient to clarify the intentions of the original parties. *See Conary v. Perkins,* 464 A.2d 972, 975 (Me.

1983) ("a surveyor may not rest his judgment on what he thinks the intention of the parties may have been contrary to [accepted rules of construction]").

1921. The referee had a duty to locate, if possible, a monument on the face of the earth. *Ricci v. Godin*, 523 A.2d 589, 592 (Me.1987). The parties, however, agreed on the precise angle of the western boundary following Stone Road. There was no evidence whatsoever that this angle along Stone Road was inconsistent with the angle as it existed in 1921. Thus, there was no error.

■ Lastly, the Hansons argue that the term "parallel" in the deed should be read to mean "roughly parallel." By such a reading one could apply the description to the ground simply by measuring 100 feet on both Stone and Turner Roads and connecting them on the north by following the undisputed first call and to the south by drawing a straight line from the southern terminus of Stone Road to the southern terminus of Turner Road. The resulting southern boundary would not, of course, be an equal distance at all points from the northern boundary. In *Hodgdon v. Campbell*, 411 A.2d 667, 672 (Me.1980), we acknowledged that other jurisdictions have defined parallel to mean "with like direction or tendency." In *Hodgdon,* however, the proper definition of the term "parallel" in a deed was not before the court. *Id.* Rather, we merely noted that the appellants had failed to challenge the referee's definition of parallel to° mean "with like direction or tendency." *Id.* Here, because neither natural monuments nor the parties' intentions compel such a deviation, we decline to adopt a deviant line that would upset the standard rules of construction.

### III

The Hansons also contend the referee erred in finding that they failed to prove their boundary by acquiescence. The Han-

sons were required to prove acquiescence by clear and convincing evidence. *Calthorpe v. Abrahamson*, 441 A.2d 284, 289 (Me.1982).[5] We review the Superior Court's adoption of the referee's finding of facts for clear error.[6] If there is credible, probative evidence supporting the finding, we must uphold the judgment. *Severance v. Choate*, 533 A.2d 1288, 1290 (Me.1987); *Aalberg v. Stevens*, 489 A.2d 1, 3 (Me. 1985).

■ To prove their possession up to a "visible line," recognized and acquiesced in by the Taylors, the Hansons rely on their planting of ornamental Chinese elm trees along a portion of what they believed to be the southern boundary of their property, a pattern of mown grass, the location of a chicken shed, and of a defunct septic tank and a dirt path meandering in an east-west direction in the southwest quadrant of their property.

The record discloses that the Hansons had cut the Chinese elms three years after the Taylors acquired their property, that the Taylors' tenant had been responsible for mowing the grass on the Taylors' property and had done so sporadically up to the Chinese elms, and that the chicken shed, defunct septic tank and dirt path were not in line with the elms or with each other. Accordingly, the referee properly found that because "no definite boundary [between the properties] was established at any time or any location" and because the Taylors could not acquiesce in a boundary that they could not identify with certainty, the Hansons' failed to establish any of the elements of acquiescence to the boundary line claimed by them.

### IV

In their complaint the Taylors sought trespass damages for removal of the Chi-

5. In that case we noted the following elements of acquiesence:

(1) possession up to a visible line marked clearly by monuments, fences or the like; (2) actual or constructive notice to the adjoining landowner of the possession; (3) conduct by the adjoining landowner from which recognition and acquiescence not induced by fraud or mistake may be fairly inferred; (4) acqui-

escence for a long period of years such that the policy behind the doctrine of acquiescence is well-served by recognizing the boundary. *Calthorpe*, 441 A.2d at 289.

6. In a non-jury reference, as here, the Superior Court must accept the referee's factual findings unless they are clearly erroneous. M.R.Civ.P. 53(e)(2).

nese elm trees. The referee determined that although the trees were in fact on the Taylors' land, the removal of the trees did not affect the value of the Taylors' property. The referee stated that no trespass damages were due because "the area in which the land is located is commercial and was commercial in 1979 when the cutting complained of occurred." On their cross-appeal, the Taylors challenge this factual finding, and we review for clear error. *Severance v. Choate,* 533 A.2d at 1290. The agreed upon measure of damages was the difference between the "market value of the land immediately before and immediately after the injury." *Nyzio v. Vaillancourt,* 382 A.2d 856, 861 (Me.1978).

■ The referee heard three local realtors testify that the Taylors' property, if put on the open market, would most likely attract a commercial buyer, and the presence or absence of trees made little or no difference to the property's value. The referee heard the following evidence that the Taylor property was in a commercial area:[7] there is 1) a restaurant nearby with parking on both sides of the street, 2) a gas station and convenience store just beyond the restaurant, 3) another gas station and a Kawasaki dealer across the street, 4) a small airport just north of the gas station, and 5) Hanson's own used car dealership next door.

The Taylors presented no evidence that some or all of the commercial enterprises surrounding their property were not in existence in 1979. Thus, the referee's finding that the area was commercial in 1979, and the loss of the trees gave rise to no damages, is not clearly erroneous.

The Taylors' other claims are without merit.

The entry is:

Judgment affirmed.

All concurring.

7. The record does not indicate how the property was zoned under local ordinances.