PHILIP H. STUBBS

*vs.*

FRANKLIN & MEGANTIC RAILWAY COMPANY.

Franklin.    Opinion April 3, 1906.

*Real Actions.    What a Receipt Settles.    Equitable Estoppel.    Plaintiff Estopped.*
*No Recovery for Mesne Profits When Writ Contains no Claim for Same.*
*R. S. 1883, c. 61, § 16.*

A receipt settles only such matters as are comprehended in it by the intention of the parties.

The plaintiff as treasurer of a railroad company executed a mortgage of the road between certain termini to secure certain bonds. Within these bounds was that portion of the road which had been located and graded across the demanded premises with the knowledge and consent of the plaintiff. The defendant corporation represents, and is the successor in title of, the purchaser of the bonds.

*Held:* that while no estoppel can arise unless he who alleges it was induced to and did in fact act, relying upon the conduct of the party whom he seeks to estop, yet from the well known course of business in the commercial world there arises a presumption of fact, sufficient in the absence of any evidence to the contrary, that parties who purchase railroad bonds rely upon the trust mortgage and the property contained in it as security.

The plaintiff did not merely remain silent. His assisting in the execution of the mortgage from the railroad company was a positive affirmative act, which would naturally lead the purchaser of the bonds to believe that he did not have title to the property which the mortgage purported to convey. Under these circumstances the fact that the public records disclosed the true state of the title, that the railroad had no easement in the demanded premises, will not prevent the estoppel of the plaintiff from denying such an easement.

The mortgage was a representation made to those who might contemplate purchasing the bonds, for the purpose of influencing their action, and which naturally would have that effect. Plaintiff might have been ignorant of the true state of the title, but such ignorance will not excuse a party who by his own representation misleads, though innocently, a purchaser. When one of two innocent parties must suffer, the loss falls upon him whose acts occasion it.

In order to create an equitable estoppel, it is not necessary that there should be intentional moral wrong. There may be such negligence as is the equivalent of fraud.

*Held:* that the plaintiff is estopped from denying that the defendant has not the usual statutory easement in the location of its main track across the demanded premises.

Where a writ in a real action contains no claim for mesne profits, none can be recovered.

On report.

Judgment for plaintiff, subject to easement of defendant in a strip one and one-half rods wide on each side of its main track across demanded premises.

Real action to recover two parcels of land in the town of Strong, Franklin County. The defendant seasonably disclaimed part of the first parcel and afterwards by an amendment to its pleadings added the following thereto by way of brief statement :

" 1.    That the defendant had title at the date of said writ and for a long time prior thereto to so much of said premises as was used by it in connection with the maintenance and operation of its railway and that the plaintiff is estopped by his own acts and conduct from setting up or claiming any title to the same ; said defendant having so used and occupied so much of the land in item one in the writ as is not disclaimed and of the land described in item two in the writ a strip three rods wide, being one and one-half rods on either side of the middle line of its railway track, across said land a distance of 1,068 feet.

"2.    That the plaintiff has waived all claims to said land, so used and occupied by the defendant, or any damages therefor, said railroad having been legally located over the same.

"3.    That if the plaintiff at any time had any claim or any right of action for any portion of said premises so used and occupied by it the same was extinguished and relinquished on or about the eighth day of May, 1903, at which time all claims between said plaintiff and defendant were released and discharged by mutual consent for a valid consideration."

The defendant is the successor in title of the Franklin & Megantic Railroad Company, which was organized in 1883, and which constructed its road across the demanded premises and built upon the first parcel a woodshed, roundhouse, repair shop, etc. No legal location of this road built by the Franklin & Megantic Railroad Com-

pany was shown and neither did a legal taking of any of the first parcel of the demanded premises for a woodshed, etc., appear.

The plaintiff, an attorney at law, was a promoter and one of the original associates of the Franklin & Megantic Railroad Company, a stockholder and director from the beginning to the end, its counsel, a member of the committee to secure rights of way, one of its managing directors, its general manager and ticket agent, clerk, treasurer and local superintendent, which offices he continued to hold until the organization of the defendant corporation in 1897. By the defendant's brief it was "admitted that the plaintiff had title to the property in question before the construction of the road and there is no evidence of any payment to him of land damages for the taking."

The action was tried at the May term, 1905, of the Supreme Judicial Court, Franklin County, and after the evidence on both sides had been taken out it was agreed to report the same to the Law Court and that "upon so much thereof as is legally admissible the court to render such judgment as the law and evidence require."

All the material facts are stated in the opinion.

*Heath & Andrews,* for plaintiff.

*Cornish & Bassett and F. W. Butler,* for defendant.

SITTING: WISWELL, C. J., EMERY, WHITEHOUSE, SAVAGE, POWERS, SPEAR, JJ.

POWERS, J. This case, which comes to the Law Court upon report, is a real action to recover two parcels of land in the town of Strong. The defendant seasonably disclaimed part of the first parcel, and at a later term, by an amendment to its pleadings, abandoned all claim to the second parcel except a strip 1068 feet in length and three rods wide, being one and one-half rods on each side of its railroad track crossing said parcel. As to this strip and so much of the first parcel as was not disclaimed, the defendant contended that they were used by it in connection with the maintenance and operation of its railway, and that the plaintiff was estopped by his acts and conduct from setting up or claiming any title to the same.

It is admitted that the plaintiff's father died intestate, seized and

possessed of the real estate in controversy, and the evidence shows that by inheritance and by deeds the plaintiff in 1879 obtained a good title to the property. The defendant is the successor in title of the Franklin & Megantic Railroad Company, a corporation organized in 1883, which constructed its road across the demanded premises and built upon the first parcel a woodshed, roundhouse, repair shop, etc., in 1884. The case does not show a legal location of this road, under R. S. 1883, chapter 61, or a legal taking of any part of the first parcel for side tracks, woodsheds, repair shops, etc., under section 16 of that chapter.

The first defense interposed by the defendant is that all plaintiff's claim or right of action for any portion of the premises used or occupied by it in connection with the maintenance or operation of its railway, has been for a valid consideration extinguished and relinquished. It appears that on May 9, 1903, the plaintiff held certain interests in the Franklin & Megantic Railroad Company, the Kingfield & Dead River Railway Company, the Kingfield & Dead River Railroad Company, and the defendant corporation, consisting of stock, notes, second mortgage bonds, contracts and collateral. On that day he entered into a mutual agreement with Lewis & Maxcy the former holders of four-fifths of the first mortgage bonds of the F. & M. R. R. Co., and who at that time owned four-fifths of the stock of the defendant corporation, to convey to them for a valuable consideration all his said interests, and to give a receipt and discharge of all claims against the F. & M. R. R. Co., and the defendant. In June following this agreement was carried out. Lewis & Maxcy paid the plaintiff $16,000, relieved him from liability on a certain note held by one Mead, and received in return a transfer of all his interests named in said agreement and a receipt discharging "the said companies of all claims."

Does the receipt debar the plaintiff from maintaining this suit? We think not. Such a receipt settles only such matters as are comprehended in it by the intention of the parties. It is to be construed in connection with the agreement which it was given to carry out. That by its terms relates to the plaintiff's interests in the four railway corporations named. The opening clause reads: "With reference to my interests in the F. & M. R. R. Co., the F. & M. Ry. Co.

the K. & D. R. R. R. Co. I make the following offer." Then follows a list of stocks, bonds, notes and debts, concluding, "I will also give a receipt and discharge of all claims." The natural inference is, that the parties were dealing with personal property and with claims payable in money whose enforcement could give the plaintiff any interest in the road. Neither the agreement nor the receipt is under seal. They do not purport to deal with nor convey real estate. This settlement was made by experienced business men with the assistance of able counsel on each side. Neither the language nor form is such as we should expect to find them adopting, had they understood that they were conveying title to land. Moreover, the case shows that at the time the agreement was entered into and the receipt given, Lewis & Maxcy did not know but that the railroad had been legally located and the land legally taken. No difference had arisen between them in regard to the subject matter of this suit, a suit not to obtain damages for land taken, but to recover the land itself. It is impossible to conclude that it was at that time the intention of the parties, or in any way within their contemplation, that the receipt should debar the plaintiff from asserting title to real estate that he owned.

The defendant in its plea set up and relied upon an equitable estoppel based upon the plaintiff's acts and conduct. The doctrine of equitable estoppel has been so fully and frequently examined and expounded by this court, and so recently in *Rogers* v. *Street Railway*, 100 Maine, 86, that it is only necessary here to ascertain whether the elements exist which justify and call for its application to the facts of this case.

The plaintiff was a promoter and one of the original associates of the Franklin & Megantic Railroad Company, a stockholder and director from the beginning to the end, its counsel, a member of the committee to secure rights of way, one of its managing directors, its general manager and ticket agent, clerk, treasurer and local superintendent. All these offices he continued to hold until the organization of the defendant corporation by the holders of the first mortgage bonds in 1897, a period of nearly fourteen years. The case shows that the construction of the railroad and the erection of the

buildings upon his land was done with his knowledge and consent. At a meeting of the stockholders on Sept. 6, 1884, upon the plaintiff's motion it was voted: "that the directors be authorized to mortgage the railroad with all its appurtenances, with the franchise of said company, and all real and personal property, now acquired and used or that may be acquired and used in connection with said railroad, to secure bonds to the amount of $50,000." The same date the directors authorized the president of the road and the plaintiff as treasurer, to sign the trust mortgage and appointed him one of the three trustees of the mortgage. Sept. 15, 1884, the trust mortgage from the Franklin & Megantic Railroad Company to the plaintiff and the other trustees was executed by the plaintiff as treasurer of the corporation. It conveyed "the railroad of the Franklin & Megantic Railroad Company from its junction with the Sandy River Railroad Co. in Strong to its terminus in Kingfield, and all its appurtenances, with the franchise of said company, all its real estate and all its personal property of every nature now acquired and used or that may be acquired and used in connection with said railroad." At that time the railroad had been located and the grading done across the plaintiff's farm and his homestead constituting the demanded premises. The evidence does not show whether the buildings were erected on the first parcel of real estate before or after the mortgage was given. This trust mortgage securing the first mortgage bonds was foreclosed, and the defendant corporation, formed by the first mortgage bondholders, entered into its possession of the railroad August 16, 1897, and has continued to occupy and operate it ever since.

The mortgage purported to convey the railroad of the Franklin & Megantic Railroad Company from its junction with the Sandy River Railroad in Strong to its terminus in Kingfield, and included within these bounds was that portion of the road which had been located by the engineer of the company and graded across the demanded premises. It was made for the purpose of securing the bonds of the road and thus inducing would be purchasers to invest in them. It cannot be doubted that the security operated as an active inducement to the investment. No estoppel can arise unless he who

alleges it was induced to and did in fact act, relying upon the conduct of the party whom he seeks to estop. *Tower* v. *Haslam*, 84 Maine, 86. From the well known course of business in the commercial world there is a presumption of fact that parties who purchase railroad bonds rely upon the trust mortgage and the property contained in it as security. In the absence of any evidence to the contrary that presumption is sufficient.

Maxcy & Lewis, who purchased four-fifths of the bonds before the organization of the defendant corporation, were ignorant of the true state of the title. The remaining bonds were held by the plaintiff, and exchanged by him for stock in the new corporation which was sold to Maxcy & Lewis before bringing this suit. If he did not know the true state of the title, as the owner of the land, occupying so many prominent positions in and sustaining such intimate relations with the old corporation, he ought to have known it. He had better opportunities for ascertaining the truth than did the purchasers of the bonds to whose rights the defendant has succeeded. It is true that an examination of the records in the offices of the railroad commissioners and the county commissioners might have revealed the truth. The plaintiff however did not merely remain silent. His assisting in the execution of the mortgage was a positive affirmative act, which would naturally lead anyone to believe that he did not have title to the security which the mortgage purported to convey, and that, as to him at least, the railroad company had the usual statutory easement in those portions of his real estate which it was then occupying and using with all the visible indicia of ownership. Under these circumstances the fact that the public records revealed the true state of the title will not prevent the estoppel applying to him. The mortgage must be regarded as a representation made to those, who might contemplate purchasing the bonds, for the purpose of influencing their action, and which naturally would have that effect. Ignorance of the true state of the title, will not excuse a party who by his own representations misleads, though innocently, a purchaser. *Titus* v. *Morse*, 40 Maine, 355. When one of two innocent parties must suffer, the loss falls on him whose own acts occasion it. *Colby* v. *Norton*, 19 Maine, 412.

The doctrine of equitable estoppel should be applied with great care. It is not necessary, however, that there should be intentional moral wrong. There may be such negligence as is the equivalent of fraud. *Martin* v. *M. C. R. R. Co.*, 83 Maine, 100. In the case at bar the money, obtained from the sale of bonds, was used in the further construction and equipment of the road in which the plaintiff was largely interested. The land used by the railroad was a part of or in the immediate vicinity of his homestead, and almost daily within his vision. He was chairman of the committee to obtain rights of way, in addition to all the other prominent positions which he held in the old corporation, and was throughout most intimately connected with its promotion and management. He made no claim, in contravention of the title which the mortgage purported to convey, for more than nineteen years after its execution, and not until he had parted with all his interests in the road.

The defendant's buildings upon the demanded premises were removed after the bringing of this suit. The case fails to show what land was occupied by such buildings or by the defendant's side tracks, etc., or that any land was so used or occupied by it at the time the plaintiff executed the mortgage.

Under all the circumstances it would be so inequitable and unjust to permit the plaintiff now to deny, to the injury of the defendant, that which by his conduct he asserted for the purpose of influencing, and which did in fact influence, the action of those to whose rights the defendant has succeeded, that he must be held to be estopped from denying that the defendant has the usual statutory easement in its location of its main track across the demanded premises, which in this case appears to be a strip one and one-half rods wide on each side of the centre line of its track.

The writ contains no claim for mesne profits, and therefore there can be no recovery for them.

> *Judgment for the plaintiff, subject to the easement of the defendant in a strip one and one-half rods wide each side of its main track across the demanded premises.*