Foster ROBERTS et al.

v.

FRANK L. McKINNEY, INC. et al.

Supreme Judicial Court of Maine.

Argued Nov. 13, 1984.
Decided Dec. 26, 1984.

Smith & Elliott, P.A., Thomas S. Coward (orally), Saco, for plaintiffs.

Sanderson & Dudley, Paul G. Sanderson, Anthony S. Hartnett (orally), Portsmouth, N.H., for defendants.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, VIOLETTE, WATHEN and SCOLNIK, JJ.

McKUSICK, Chief Justice.

Plaintiffs Foster and Robert Roberts appeal an order of the Superior Court (York County) granting the motion of defendant Frank L. McKinney, Inc. ("McKinney") [1] under M.R.Civ.P. 70. That order, issued in April 1984, after finding that an intervening sheriff's sale was void, directed enforcement of a 1977 order that rescinded for mutual mistake a 1973 contract between the parties for the purchase and sale of a two-acre lot in Berwick. On appeal, the Robertses first argue that the April 1984 order is not a final judgment appealable to this court. If the appeal is properly before us, they contend that the Superior Court erred in holding that the 1977 order

---

1. At all times Frank L. McKinney, the owner and principal agent of the corporate defendant, has been named as a co-defendant. Since his corporation held title to the real estate that is the subject of this protracted litigation, the corporation will be treated in this opinion as if it was and is the sole defendant.

was not enforceable by execution and sheriff's sale. In addition, they contend that the Superior Court erred in setting aside the sheriff's sale because that ruling impaired the rights of a bona fide purchaser to whom the Robertses have since sold the land. Finally, the Robertses assert that by its inaction McKinney waived its rights in this matter. Finding no merit in any of plaintiffs' points on appeal, we affirm the decision below.

In 1973 McKinney contracted to sell the Robertses a two-acre portion of its ten-acre tract of land in Berwick. On April 13, 1973, McKinney gave the Robertses a deed in exchange for the purchase price of $2,000. The purchasers proceeded to make improvements on the two-acre lot that they thought they had bought. It turned out, however, that the lot they improved was in fact different from the two acres described in the 1973 deed. Accordingly, the Robertses sued McKinney for rescission on the ground of mutual mistake. On November 18, 1977, the Superior Court issued the following order:

> That Defendant [McKinney] repay to Plaintiffs [the Robertses] the purchase price of $2000.00. Defendant is also to reimburse Plaintiffs for their expenditures totalling $1,552.00, together with costs. Plaintiffs are to reconvey the property conveyed to them by Defendant as set forth in deed dated April 13, 1973.

The Robertses thereafter did not at any time tender to McKinney a deed reconveying the two acres, but rather proceeded at once as if they had a money judgment ready to be collected from McKinney. They caused a lien to be placed on all of McKinney's real estate in York County; obtained a writ of execution from the Superior Court clerk; and caused McKinney's real estate in York County to be sold to themselves at a sheriff's sale held on March 29, 1978. The sheriff's deed to the Robertses along with three later corrective deeds, all recorded in the York County Registry of Deeds, described the entire ten-acre parcel.

McKinney, a New Hampshire corporation, along with its owner and principal, a resident of Portsmouth, New Hampshire, claim to have had no knowledge of the sheriff's sale until shortly before July 11, 1980, when McKinney filed the motion that resulted in the order now on appeal. That motion, brought purportedly under M.R. Civ.P. 70, sought enforcement of the decree of rescission of November 18, 1977. While the motion was pending the Robertses in August 1983 sold the ten acres of land to a third person, who is not joined as a party to this action. On April 11, 1984, after fully hearing the parties, the same Superior Court justice who had issued the original 1977 order entered the order now on appeal. After declaring the sheriff's sale and the resulting deeds to the Robertses void, the justice directed entry on the docket of an order as follows:

> Plaintiffs [the Robertses] are to tender a deed for the 2 acre parcel purchased from [McKinney] in 1973 to [McKinney] within 60 days of this Order. Upon tender of the deed [McKinney] is to pay to plaintiffs the sum of $3570.50 plus 6% per year interest on that sum for the period of September 29, 1975, to August 16, 1977, the date at which plaintiffs received a continuance for the trial date.

### 1. The 1984 Order as a Final Judgment

■ We reject the Robertses' contention that the 1984 order of the Superior Court is not a final judgment appealable to the Law Court.[2] The 1984 order clearly meets the requirements of the final judgment rule.

---

**2.** Neither party has raised any question as to the finality of the 1977 order. There was never an entry of judgment under that ruling because the justice never settled the judgment, as is required by M.R.Civ.P. 58. The 1977 order did not specify a time for performance, and it did not state whether the actions were to be performed coincidentally or in some successive order. In any event, the absence of a final judgment in 1977 has no effect on the current appeal of the 1984 judgment.

*See Hazzard v. Westview Golf Club, Inc.,* 217 A.2d 217, 222–23 (Me.1966). "Where [as here] the judgment fully decides and disposes of the whole cause leaving no further questions for the future consideration and judgment of the [trial] [c]ourt, the finality thereof is obvious." *Id.* at 222.

## 2. *Validity of the Sheriff's Sale*

◼ Rejecting the Robertses' contention, we uphold the Superior Court's holding that the sheriff's sale was void and of no effect. The 1977 order did not give the Robertses a money judgment, enforceable by execution and sheriff's sale. The 1977 order was an equitable decree, at most enforceable by the Superior Court's contempt power. The 1977 order instructed McKinney to *"repay"* the Robertses the purchase price and to *"reimburse"* them for their expenses in improving the land. The Robertses, at the same time, were required to *"reconvey"* the two acres of land transferred to them by McKinney. These words belie the notion that the Robertses received an unconditional money judgment from the Superior Court in 1977. The order required that both parties undertake specific reciprocal *actions* so that the mutual mistake would be corrected through the court's exercise of its equitable powers.

The distinction between a judgment for money and an equitable order to repay money is illustrated by comparing Rule 69 and Rule 70 of the Maine Rules of Civil Procedure. Rule 69 provides in pertinent part:

> Process to enforce a judgment for the payment of money shall be by writ of execution ....

Rule 70 on the other hand provides for the enforcement of orders when the court has gone beyond unconditionally entering judgment for the payment of money by one party to another:

**3.** Maine Title Standard 207 reads in full:
  **PROBLEM:**
  If record title rests in part upon a court decree or judgment, what court records be-

> If a judgment directs a party to execute a conveyance of land or to deliver deeds or other documents or to *perform any other specific act* and the party fails to comply within the time specified, the court may direct the act to be done at the cost of the disobedient party .... The court may also in proper cases adjudge the party in contempt.

(Emphasis added) The 1977 order in the case at bar was such a decree. No part of the court's instructions for "repayment," "reimbursement," and "reconveyance" by the parties can be pulled out and treated as a money judgment within Rule 69. The whole order of rescission required the parties to perform specific acts, enforcement of which was available under Rule 70, not Rule 69. Thus, the April 1984 order of the court, declaring the sheriff's sale of no effect and directing the parties how to comply with its 1977 rescission ruling, was not error.

## 3. *Sale to Third Party Purchaser*

◼ The Robertses assert that the person to whom they in 1983 gave a warranty deed to the ten-acre parcel was a bona fide purchaser and that the Superior Court's order now on appeal must be vacated because it impairs that purchaser's title. That argument is quickly answered—even assuming solely for present purposes that the Robertses have standing to assert the rights of the absent third party. The simple fact is that in any event the absentee is not a bona fide purchaser. The buyer is charged with notice of the fatal defect in the Robertses' title. A title search conducted in August 1983 in compliance with the Maine Title Standards issued by the Maine State Bar Association would have revealed the fatal defect in the proceedings leading up to the sheriff's sale. Maine Title Standard 207 (1984).[3] Furthermore,

hind the degree or judgment, if any, should be abstracted?
  **RECOMMENDATION:**
  A copy of the complaint and of the docket and the details of service should be included

 

examination of the complete record of this proceeding, pursuant to Maine Title Standard 202, Recommendation E (1984),[4] would have revealed McKinney's 1980 motion (still pending in August 1983) attacking the validity of the sheriff's sale. *Cf. City of Auburn v. Mandarelli,* 320 A.2d 22 (Me.), *appeal dismissed,* 419 U.S. 810, 95 S.Ct. 25, 42 L.Ed.2d 37 (1974) (purchasing party charged with notice of recorded tax lien).

#### 4. *Waiver*

Finally, the Robertses assert that McKinney's delay in prosecuting its 1980 Rule 70 motion and lack of other legal action constituted a waiver of its claims. This claim lacks merit. A waiver is an *intentional* relinquishment of a known right. *T–M Oil Co. v. Barnes,* 402 A.2d 857, 859 (Me.1979). A waiver may be shown by a course of conduct signifying a purpose not to stand on a right, and leading, by a reasonable inference, to the conclusion that the right in question will not be insisted upon. *Houlton Trust Co. v. Lumbert,* 136 Me. 184, 186, 5 A.2d 921, 922 (1939). In the case at bar, McKinney never evidenced any intention to waive its known legal rights. The corporation continued to pay the mortgage on the property and filed an unsuccessful motion for relief from the 1977 order in March 1978, and filed the present motion under Rule 70 in July 1980. Negotiations between the Robertses and McKinney, doomed to fail by both parties' intransigence, account for the long periods of inaction in this litigation. McKinney never took any action that leads by any reasonable inference to a conclusion that it would not insist on its right to have the 1977 order of rescission carried out.

in the abstract in addition to the decree or judgment.

DISCUSSION:

The examiner is responsible for examining any court records necessary to determine the validity of the action.

4. Maine Title Standard 202 reads in pertinent part:

The entry is:

Judgment affirmed.

All concurring.

PROBLEM:

What records and indices should be examined and for what period?

RECOMMENDATION:

.   .   .   .   .

E. Court records (where examiner has notice or there is some indication otherwise on the record of litigation involving the locus).