### Frederick F. SEVERANCE et al.

v.

### Richard F. CHOATE.

Supreme Judicial Court of Maine.

Argued Sept. 9, 1987.

Decided Nov. 30, 1987.

Peter T. Dawson (orally), Augusta, for plaintiff.

Gregory J. Farris, Walter T. Ollen, Jr. (orally), Farris & Susi, Gardiner, for defendant.

Before McKUSICK, C.J., and NICHOLS, WATHEN, GLASSMAN, SCOLNIK and CLIFFORD, JJ.

GLASSMAN, Justice.

The defendant, Richard F. Choate, appeals from a judgment of the Superior Court, Kennebec County, adopting a referee's report fixing the location of the boundary between land of Choate and land of the plaintiffs, Frederick F. Severance and Joanna A. Severance (Severance). Choate claims that the evidence does not support the referee's application of the principles of waiver and estoppel to establish the boundary. For the reasons set forth in this opinion, we agree with Choate and vacate the judgment.

## I

In October 1983, Severance filed a complaint in the Superior Court seeking declaratory relief as to the disputed boundaries of a certain piece of land located in Farmingdale purchased by Severance from Choate, reformation of the deed from Choate to Severance dated June 23, 1961, and damages for the alleged trespass by Choate. Choate counterclaimed seeking a declaration of the boundaries of the Severance land and damages for the alleged trespass by Severance. The matter was submitted to reference by agreement of the parties. The parties agreed that the Severance property measured two hundred feet on all four sides and that it was bordered on the west by land owned by William Markham, on the south by Bowman Street Extension, and on the north and east by land owned by Choate. They also agreed as to the exact location of the northwest corner of the Severance property. The disagreement between the parties primarily centered on the location of the southwest corner of the Severance property. Severance maintained that location was marked by an iron pin set in a bucket of cement. Measuring from that point 200 feet along Bowman Street Extension would fix the southeastern corner of the eastern boundary of his land as beyond the easterly boundary of a driveway constructed by him in 1965 and a row of spruce trees planted by him in 1977. Choate maintained that the southwest corner of the Severance property was marked by a painted green "X" on a rock located 23 feet west of the iron pin in the bucket of cement. Fixing the southeast corner of the eastern boundary of the Severance property 200 feet along Bowman Street Extension from that point would place the row of trees and a portion of the Severance driveway on the property owned by Choate. Two surveyors, one for Choate, who surveyed the property in 1980, and one for Severance, who surveyed the property in 1981, reached different conclusions as to the location of the disputed boundary.

After hearing, the referee filed his report with the Superior Court.[1] He located the southwestern corner of the Severance land at the point of the rock with the painted green "X", as claimed by Choate. After finding that the southeast corner of the Severance land would be at a point 200 feet from the southwest marker measured along the line of Bowman Street Extension, "were it not for one controlling factor," the referee found:

> In 1965 [Severance] built their driveway, part of which extends somewhat southeasterly of the line as it would exist if that two hundred (200) foot measurement controlled. [Choate] was fully aware of this construction and offered no objection to the driveway location. Moreover, he stated, and has reaffirmed that statement in his testimony, that he does not desire to deprive [Severance] of the use of their driveway as it exists. This friendly and generous waiver by [Choate], when coupled with elements of estoppel, permits me to find no impediment to establishing the line far enough in a southeasterly direction to avoid any impairment of [Severance's] title to their driveway.

Accordingly, the referee located the southeast corner of the Severance land 212.5 feet from the southwest corner of said land and recommended, *inter alia*, that the Superior Court enter judgment for Severance providing for the reformation of the deed from Choate to Severance dated June 23, 1961, to set forth the property description appearing in the report.[2]

Both parties filed objections to the report. Severance also filed a motion to accept the report. After hearing, the Superior Court granted the motion to accept the report and entered a judgment in accordance with the recommendations contained in the report of the referee. Choate appeals.

## II

The sole issue raised by Choate on appeal is that the evidence at reference was insufficient to justify applying the principles of either waiver or estoppel to establish the easterly boundary of the Severance property.

Initially, we note that both waiver and estoppel rest on specific findings of fact. *See, e.g., Roberts v. Maine Bonding & Casualty Co.*, 404 A.2d 238, 243 (Me.1979). A referee's factual findings must be adopted by the Superior Court unless they are clearly erroneous. M.R.Civ.P. 53(e)(2). On appeal, we must uphold the Superior Court's adoption of the referee's report if there is credible, probative evidence supporting the referee's findings, even though there may be evidence to support a contrary finding. *Aalberg v. Stevens*, 489 A.2d 1, 3 (Me.1985) (citing *Federal Trust Co. v. Cianbro Corp.*, 434 A.2d 42, 44 (Me.1981)).

---

1. The referee also found, independent of the pending dispute, that there was manifest error in the description of the courses in the deed dated June 23, 1961 from Choate to Severance that should be corrected.

2. The referee recommended the deed be reformed to read:
 > Commencing on the northeasterly side of Bowman Street Extension at an iron pin to be relocated at the side of a flat stone on which is painted a green letter X, being the most southerly corner of land now or formerly owned or occupied by one Robert Markham; thence running in a northeasterly direction, and at an angle of 88° 29′ 40″ with said line of said street, along the southeasterly line of said Markham land two hundred (200) feet to an iron pin set in the ground; thence running in a southeasterly direction along the line of land of this grantor, and parallel with the northeasterly line of said street, a distance of two hundred (200) feet to a point to be marked by an iron pin set in the ground; thence in a southwesterly direction along the most northwesterly side of a right of way of said grantor a distance of two hundred (200) feet more or less to the most northeasterly line of said street; thence in northwesterly direction by said northeasterly line of said street two hundred twelve and one half (212.5) feet to the point of beginning.

 The referee further recommended:
 > [T]hat the boundary line between the most southeasterly line of Plaintiffs' lot and the Defendant's right of way land is the line described in the third call of the reformed description ... said line terminating on the most northeasterly line of said street at a point two hundred twelve and one half (212.5) feet from the most southerly corner of land of one Robert Markham.

To support the referee's finding of waiver, the evidence must disclose that Choate intentionally relinquished a known right. *Roberts v. Frank L. McKinney, Inc.*, 485 A.2d 647, 651 (Me.1984). Because a waiver must be intentional, the inquiry focuses on the fundamentally subjective factors of knowledge and intent of the person charged with the waiver. *Pino v. Maplewood Packing Co.*, 375 A.2d 534, 538 (Me. 1977); *see also Roberts v. Maine Bonding & Casualty Co.*, 404 A.2d at 241. A failure to know the right alleged to have been waived is always fatal to a waiver claim. *See Agway, Inc. v. Ernst*, 394 A.2d 774, 778 (Me.1978) (no waiver of buyer's right to collect overpayment because buyer did not know of change in price formula); *Pino v. Maplewood Packing Co.*, 375 A.2d at 538 (no waiver of employer's right to assert bar to employee's worker's compensation claim because employer did not know filing requirement).

The referee based his finding of waiver on Choate's silence following the installation of Severance's driveway in 1965, and Choate's statement in 1980 that he did not intend to deprive Severance of the use of his driveway. This finding is clearly erroneous because neither Choate's silence nor his later statement can support a waiver.

█ It appears from the record that the disputed eastern boundary of the Severance land was never firmly fixed on the face of the earth. Indeed, in 1977 when Severance planted a line of spruce trees easterly of his driveway, he specifically asked Choate the location of the now-disputed boundary, and Choate replied that he did not know. It was not until the land was surveyed in 1980 that Choate knew the exact location of the western boundary line of his property that formed the eastern boundary of the Severance property.

█ Choate's later statement that he did not "desire to deprive [Severance] of the use of their driveway as it exists," made after Choate's 1980 survey established that the driveway was partially on Choate's property, could not lead even by reasonable inference to the conclusion that Choate waived all his present and future legal rights to the claimed land. *See Roberts v. Frank L. McKinney, Inc.*, 485 A.2d at 651. Legal title to real property cannot be so easily transferred.[3] Choate's statement that Severance could use his driveway, even though a portion of it was on Choate's land, did not indicate that Choate thereby relinquished his right of ownership to that land. *Cf. Interstate Indus. Uniform Rental Inc. v. Couri Pontiac, Inc.*, 355 A.2d 913, 919 (Me.1976) (no waiver of contract right when plaintiff suspended its service as an accommodation to defendant).

Turning now to equitable estoppel, we have previously stated that its proper use rests on a factual determination that "the declarations or acts relied upon must have induced the party seeking to enforce the estoppel to do what resulted to his detriment, and what he would not otherwise have done." *George D. Ballard, Builder v. City of Westbrook*, 502 A.2d 476, 483 (Me.1985) (quoting *Allum v. Perry*, 68 Me. 232, 234 (1878)); *see also Shackford & Gooch, Inc. v. Town of Kennebunk*, 486 A.2d 102, 105–06 (Me.1984) (quoting same language); *Martin v. Prudential Insurance Co*, 389 A.2d 28, 31 (Me.1978) (quoting same language). The doctrine prevents one from later asserting the truth if he has previously induced another to believe in and rely on an untruth. *Shackford & Gooch, Inc. v. Town of Kennebunk*, 486 A.2d at 106. The reliance on which estoppel is claimed must be reasonable. *Roberts v. Maine Bonding & Casualty Co.*, 404 A.2d at 241.

---

3. No claim of adverse possession has been made or could be proven on these facts. The required twenty years of open, hostile and continuous possession exemplify the law's safeguards around the informal and unwritten passage of title to real property. *See Glover v. Graham*, 459 A.2d 1080, 1084 (Me.1983).

Because no claim of acquiescence was presented, we need not decide whether that doctrine's standards have been met. We note, however, that acquiescence requires "a long period of years such that the policy behind the doctrine ... is well-served by recognizing the boundary." *Calthorpe v. Abrahamson*, 441 A.2d 284, 289 (Me.1982).

The doctrine of equitable estoppel should be carefully and sparingly applied; a mere misunderstanding will not support its application. *Anderson v. Comm'r of Dep't of Human Serv.*, 489 A.2d 1094, 1099 (Me. 1985); *see also Pino v. Maplewood Packing Co.*, 375 A.2d at 539 (negligent conduct must be the "equivalent of fraud") (quoting *Stubbs v. Franklin & Megantic Ry. Co.*, 101 Me. 355, 362, 64 A. 625, 627 (1906)). The party seeking to invoke the doctrine must prove estoppel by "clear and satisfactory" evidence. *Milliken v. Buswell*, 313 A.2d 111, 119 (Me.1973).

██ In the instant case the record discloses no evidence that Severance relied on or was induced by Choate's silence or conduct to construct the driveway at its present location or to plant spruce trees approximately 15–20 feet easterly of the driveway. Nor can it be said that the construction or location of the Severance driveway or the planting of the row of spruce trees was in any way affected by Choate's statement in 1980 that he did not intend to interfere with Severance's use of his driveway.

The referee's finding of waiver and estoppel regarding the location of the southeast corner and easterly boundary of the Severance property was clearly erroneous. Accordingly, we vacate the judgment of the Superior Court and remand this matter for entry of judgment providing that the property description in the deed given by Choate to Severance dated June 23, 1961 be reformed to read as follows:

> Commencing on the northeasterly side of the Bowman Street Extension at an iron pin to be relocated at the side of a flat stone on which is painted a green letter X, being the most southerly corner of land owned or formerly owned or occupied by one Robert Markham; thence running in a northeasterly direction, and at an angle of 88° 29' 40" with said line of said street, along the southeasterly line of said Markham land two hundred (200) feet to an iron pin set in the ground; thence running in a southeasterly direction along the line of this grantor and parallel with the northeasterly line of said street, a distance of two hundred (200) feet to a point marked by an iron pin set in the ground; thence in a southwesterly direction along the most northwesterly side of a right of way of said grantor a distance of two hundred (200) feet to the most northeasterly line of said street; thence in a northwesterly direction along the northeasterly line of said street two hundred (200) feet to the point of beginning.

The entry is:

Judgment vacated; remanded to the Superior Court for further proceedings consistent with the opinion herein.

All concurring.