Ethiland L. WALKER

v.

Joseph G. PROVOST, et al.

v.

Lester E. JOY.

Supreme Judicial Court of Maine.

Argued Oct. 31, 1989.
Decided Nov. 30, 1989.

Edward J. Titcomb (orally) Waterhouse, Titcomb, Flaherty & Knight, Sanford, for Lester E. Joy.

J. Armand Gendron, Sanford, for the Provosts.

Peter W. Schroeter, (orally) Smith & Elliott, Saco, for appellee.

Before McKUSICK, C.J., and
ROBERTS, WATHEN, GLASSMAN,
CLIFFORD and COLLINS, JJ.

McKUSICK, Chief Justice.

The parties in this action dispute title to a 46.2–acre parcel of land lying west of Route 11 in Shapleigh. Plaintiff Ethiland Walker claims title to the property by a 1965 deed from the Hillside Fish Club to her late husband Vernon. The defendants, Joseph and Martha Provost, claim title to the disputed parcel by a 1971 warranty deed from Annette J. Dunnells. The Walkers commenced this action in 1981 seeking a judicial declaration that they are the owners in fee simple of the disputed parcel.[1] Shortly thereafter, the Provosts brought a third-party complaint against Dunnells seeking indemnification for any judgment entered against them.[2]

The parties agreed to submit the case to a referee, retired justice Donald W. Webber formerly of this court, who conducted a three-day hearing on the matter in October 1986. In his report, the referee concluded that Walker is the owner in fee simple of the disputed parcel. Over the objections of the Provosts and Joy, the Superior Court (York County, *Brennan, J.*) adopted the referee's findings. Finding no error, we affirm.

---

1. Vernon Walker died in 1984 and his wife has continued as plaintiff and personal representative of the deceased plaintiff.

2. Dunnells died in 1986 and the personal representative of her estate, Lester E. Joy, was substituted as the third-party defendant.

■ The Provosts and Joy contend that the referee erred in finding 1) that the deeds upon which Walker relies for her claim of title describe land containing the disputed parcel and 2) that a survey of the disputed parcel, introduced by Walker, is in any way based upon those deeds. The Superior Court is required to accept the referee's factual findings on these issues unless they are clearly erroneous. M.R. Civ.P. 53(e)(2). On appeal we will uphold the Superior Court's adoption of the referee's report as long as there is credible, probative evidence supporting the referee's factual findings, even though there may be evidence to support a contrary finding. *See Severance v. Choate*, 533 A.2d 1288, 1290 (Me.1987).

■ The record contains ample evidence to support the referee's conclusion that the deeds upon which Walker relies for her claim of title describe land containing the disputed parcel. The Walker chain of title can be traced directly back to the original conveyance of Lot 17, Range 5, in 1831. From 1831 to 1888, deeds described the property in various ways, but consistently defined a parcel containing 125 acres more or less, later reduced by certain out sales to 100 acres more or less. In 1888, one Clarissa Emery mortgaged this parcel, described as "containing 100 acres more or less". For the first time, the 1888 mortgage deed described the parcel with reference to the abutters on all four sides.

When Clarissa Emery died intestate in 1889, her son John Emery was appointed administrator. In 1893, John Emery conveyed his undivided half of all his mother's property to his sister, Lizzie, including a parcel described as containing 100 acres more or less bounded by essentially the same abutters, albeit at different compass points. An unremarkable chain of title runs from Lizzie Emery to the Walkers. The Walkers conveyed a portion of the parcel to the State in 1974, reserving for themselves all land "lying westerly of Route # 11."

The referee concluded that the property described in the 1888 mortgage deed is the same parcel described in the 1893 deed, finding that the scrivener erroneously rotated his compass directions 90 degrees when describing the abutters in 1888. The evidence supports this conclusion. Both the 1888 and 1893 deeds described identical quantities of land. *See Perkins v. Conary*, 295 A.2d 644, 646 (Me.1972) (in determining a boundary, quantity of land is a valid control when not contradicted by monuments, courses or distances.) Further, John Emery in 1893 explicitly conveyed to Lizzie Emery an undivided half of all the real estate owned by their mother, Clarissa Emery. The referee committed no error in finding that the 1888 and 1893 deeds describe the same parcel. Accordingly, the Walkers had a valid, unbroken chain of title to the land when they conveyed a portion to the State, reserving for themselves the parcel now in dispute.

■ The Provosts and Joy assert that even if the 1888 and 1893 deeds describe the same "100 acre more or less" parcel, the referee erred in concluding that the survey introduced by plaintiff Walker accurately described the disputed 46.2–acre parcel. The Provosts and Joy maintain that there was no evidence linking the survey with Walker's source deeds.

The survey of the disputed parcel was prepared by Forrest Smart, the only witness providing relevant testimony on this issue. The referee found Smart to be a qualified and expert surveyor and gave his testimony considerable weight. *See Sargent v. Coolidge*, 399 A.2d 1333, 1339 (Me. 1979) (weight given to the opinion of the surveyor is the prerogative of the referee). Smart testified that his primary responsibility in surveying the parcel was to establish the northerly and southerly boundaries of Lot 17, Range 5, in Shapleigh. Walker's chain of title can be traced back directly to the original conveyance of Lot 17 in Range 5 in 1831. Thus the referee had competent unrebutted expert testimony to support his conclusion that the survey accurately depicted the disputed parcel and was linked to Walker's source deeds.

No other challenge raised or intimated by the appellants merits discussion.

The entry is:

Judgment affirmed.

All concurring.