Gary RICCI

v.

Robert GODIN et al.

Supreme Judicial Court of Maine.

Argued Jan. 9, 1987.
Decided April 2, 1987.

Joseph M. Jabar (orally), Daviau, Jabar & Batten, Waterville, for plaintiff.

Albert L. Bernier (orally), Marden, Stevens, Bernier & Stevens, Waterville, for defendant.

Before McKUSICK, C.J., and NICHOLS, WATHEN, GLASSMAN, SCOLNIK and CLIFFORD, JJ.

CLIFFORD, Justice.

The plaintiff, Gary Ricci, appeals a judgment of the Superior Court, Kennebec County, establishing the boundary between two parcels of land located in Rome, one owned by Ricci, the other by Robert and Muriel Godin, adjoining and to the east of Ricci's land.[1] Ricci contends that the court's finding regarding the location of the disputed boundary was clearly erroneous. We agree and vacate for further proceedings.

Ricci and the Godins own adjoining parcels of land in Rome. Both parcels were once part of a tract owned by George Tibbetts and are bounded on the north by Route 225. Ricci acquired his land directly from Tibbetts by deed dated May 13, 1977. The Godins acquired their land by deed dated April 16, 1981, from James Inglis, who had acquired it from Tibbetts by deed dated January 19, 1976.

The 1976 deed from Tibbetts to Inglis described the parcel conveyed as follows:

*Beginning at an Iron Pin* set in the ground in the Southerly side of Route # 225 . . . and then going in an Easterly direction and along the Southerly side of Route # 225 for a distance of 1013 feet, more or less, to another Iron Pin set in the ground in the said Southerly side; thence turning and going in a Southerly direction and across land owned by the Grantor and along an Old Wire Fence and Spotted Trees for a distance of 1232 feet, more or less, to a Spotted Birch Tree; thence turning and going across the Grantor's land in an Easterly direction for a distance of 1200 feet, more or less, to the *Iron Pin and the Point of*

---

1. The land located east of Ricci's was conveyed to Robert and Muriel Godin by Robert, Richard and Laurel Godin by deed dated June 18, 1984. Muriel Godin was not made a party to these proceedings. Laurel Godin was a counterclaimant.

*Beginning* in the Southerly side of Route # 225.[2]

(Emphasis added.)

The description in the 1981 deed from Inglis to the Godins also used the iron pin as the point of beginning. The northern boundary in that deed followed Route 225 for a distance of 506.5 feet, then went in a straight line in a southerly direction to the spotted birch mentioned in the 1976 Tibbetts to Inglis deed and returned along the land of Ricci to the "iron pin marking the point of beginning." The same iron pin used in the 1976 Tibbetts to Inglis deed and in the 1981 Inglis to Godin deed was likewise used as the point of beginning in the 1977 deed conveying the western portion of the Tibbetts tract to Ricci. Thus all of the descriptions relevant to the location of the boundary refer to the very same iron pin as the point of beginning.

Near the Ricci-Godin line is a tote road entering on Ricci's side of the boundary from Route 225, leading in a southerly direction, and curving slightly towards the Godins' parcel and then back towards the interior of Ricci's property. Ricci uses this tote road as a driveway.

In 1984 Ricci and Richard Godin hired Michael Witham, a surveyor, to survey the Godins' land and to establish the common boundary. The Godins were felling trees near the eastern edge of the tote road, and Ricci was concerned that the Godins were cutting on his property. After a cursory search Witham was unable to find the iron pin mentioned as the point of beginning in all the relevant deeds and accordingly sought to reconstruct its location by measuring 1013 feet westward from the second iron pin mentioned in the 1976 Tibbetts to Inglis deed marking the northeastern corner of Inglis' parcel.

Refusing to accept Witham's conclusions regarding the Ricci-Godin boundary, the Godins hired their own surveyor, Vern Pinney, who also sought to reconstruct the location of the iron pin used as the point of beginning by measuring westward, as had Witham. Instead of using the second iron pin mentioned in the 1976 Tibbetts to Inglis deed as the starting point of his survey, as Witham had done, Pinney measured from the intersection of the old wire fence, mentioned in the 1976 Tibbetts to Inglis deed, with the right of way of Route 225. Pinney's survey placed the intersection of the boundary and Route 225 about 30 feet west of Witham's location. Robert Godin, who had last seen the iron pin point of beginning in the fall of 1983, had driven a pipe into the ground near, as he later testified, its original location. This pipe was farther west than Pinney's boundary location. Pinney did not use Godin's pipe in his calculations, though he did mark its location on the survey plan he prepared for the Godins.

Ricci then brought a three-count complaint against Richard and Robert Godin. In Count I Ricci sought damages for trees the Godins had felled on his land. *See* 14 M.R.S.A. § 7552 (Supp.1986). Count II of Ricci's complaint was treated by the court as seeking a judgment declaring the common boundary.[3] In Count III, Ricci sought to enforce the agreement on the part of Richard Godin to contribute toward the cost of the Witham survey. Robert, Richard and Laurel Godin counterclaimed in two counts, Count I being treated by the

---

2. The direction of the last call should be westerly. A corrective deed dated May 4, 1977, from Tibbetts to Inglis correctly describes the call running from the spotted birch tree as running in a westerly direction and further describes a jog in the westerly boundary encroaching on Ricci's land. A further correction was made in a deed dated October 9, 1984, in which Inglis conveyed to Ricci any interest he acquired by virtue of the jog in the corrective deed. The Ricci-Godin boundary as described in this last deed is a line from the same iron pin to the southwest corner of land formerly owned by Inglis.

3. Count II of Ricci's complaint purported to be brought pursuant to 14 M.R.S.A. §§ 6655–6658 (1980) to quiet and establish title. Count I of the Godins' counterclaim purported to be brought pursuant to M.R.Civ.P. 80A and 14 M.R.S.A. § 6701 (1980). At trial the court said that it would construe the counts as requests to locate boundaries, and so proceeded on the assumption that the pleadings initiated an action for a declaratory judgment. *See* 14 M.R.S.A. §§ 5951–5963 (1980); *see also Hodgdon v. Campbell,* 411 A.2d 667, 669–70 (Me.1980); M.R. Civ.P. 54(c).

court as a complaint for declaratory judgment as to the boundary location. Count II requested damages for trespass and the cutting and removal of timber.

At trial, the realtor who had sold all of the parcels carved from the Tibbetts' tract, Tibbetts' grandson, who had built the tote road in the 1970's, and the parties testified with near unanimity regarding the location of the missing iron pin described as the point of beginning in the relevant deeds. Furthermore, Tibbetts' grandson, who had visited the premises the day before trial and had seen the iron pipe driven by Robert Godin, testified that the pipe was "very near" the location of the original iron pin. All of the witnesses, including those who located the missing iron pin, testified that the tote road was on Ricci's parcel. The evidence also established the existence of another, interior iron pin about 150 feet from Route 225 on the eastern edge of the tote road. This pin was not mentioned in any of the relevant deeds, and no evidence was adduced to indicate its significance.

█ The court rejected the conclusion of the two surveyors,[4] Witham and Pinney, finding that lay testimony had established with reasonable certainty the location of the missing iron pin. Then, relying on Pinney's survey plan, admitted as defendant's exhibit #1, which showed both the iron pipe Robert Godin had driven and the interior iron pin, the court declared that the boundary extended in a line from the spotted birch tree, intersected the interior pin, and continued to Route 225. The boundary thus established bisects the tote road.

With the boundary established, the court found against Ricci on Counts I and II of his complaint, and awarded him $600 toward the cost of the Witham survey on Count III.[5] The court found against the Godins on their counterclaim seeking damages, but for the Godins on that part of the counterclaim treated as a petition for declaratory judgment. Ricci appealed the judgment to this court.

## I.

█ The physical disappearance of the iron pin point of beginning did not terminate its status as a boundary marker if its former location could be ascertained through extrinsic evidence. *See Bailey v. Look*, 432 A.2d 1271, 1274 (Me.1981). The iron pin marking the point of beginning in each of the relevant deeds having a bearing on this boundary dispute was a critical monument, and the court was obliged to determine, if possible, the location of that monument on the face of the earth. *Proctor v. Hinckley*, 462 A.2d 465, 470–71 (Me. 1983); *Perreault v. Toussaint*, 419 A.2d 1009, 1011 (Me.1980). The court thus correctly relied on the testimony of witnesses in determining the location of the missing iron pin. *See Williamson v. Gooch*, 103 Me. 402, 403, 69 A. 691, 692 (1908). Because the locations of monuments, *Greeley v. Weaver*, 13 A. 575 (Me.1888) (per curiam), and boundaries, *Conary v. Perkins,* 464 A.2d 972, 975 (Me.1983), are questions of fact, the trial court's findings will not be disturbed on appeal unless they are clearly erroneous. *Harmon v. Emerson*, 425 A.2d 978, 982 (Me.1981); M.R.Civ.P. 52(a).

The lay witnesses testified, and the court apparently agreed, that the iron pin placed in the ground by Robert Godin was very near the location of the missing iron pin. Were a straight line to be drawn from the location of that Godin placed pin ·to the spotted birch tree, the boundary established would be consistent with the evidence, and the tote road would be substantially on Ricci's side of the boundary line.

4. Contrary to Ricci's contention, the court did not have to accept the testimony of either of the two surveyors in establishing the common boundary line. It is settled in Maine law that questions of weight and credibility affecting the fact finder's evaluation of an expert's testimony are wholly within the province of the fact finder. *See, e.g., Edmonds v. Becker*, 434 A.2d 1012, 1014 (Me.1981); *Sargent v. Coolidge*, 399 A.2d 1333, 1339 (Me.1979); *Perkins v. Conary*, 295 A.2d 644, 647 (Me.1972).

5. Ricci sought the damages for the cost of the survey only against Richard Godin. The judgment was entered against both Richard and Robert Godin. No evidence linked Robert Godin with a promise to contribute to surveying costs.

## II.

■ The boundary as finally established by the court, however, appears to have been located with undue regard to the interior iron pin, located substantially farther west than the Godin placed pipe. This results in a line more favorable to the Godins than the evidence supports[6] and places the missing iron pin farther west than the evidence indicates.

The line finally established by the court as the common boundary cannot stand, since it appears to be controlled by a monument of no significance, not mentioned in the deeds nor relied on by witnesses. *See Proctor*, 462 A.2d at 469. No witness, including the witnesses testifying to the location of the missing iron pin, located that iron pin so as to place the tote road, which Ricci uses as his driveway, on the Godin property.

Upon remand, the court should reconsider its boundary determination and further reconsider the issue raised in Count I of Ricci's complaint, whether Robert and Richard Godin have cut and taken away trees located on Ricci's land, in light of the boundary to be correctly established. The court may take additional evidence in its reconsideration.

■ In addition, the court's judgment in Count III of the complaint against Robert Godin cannot stand, since there is no evidence indicating Robert Godin ever agreed to reimburse Ricci in any way for the Witham survey, or that Richard Godin was Robert Godin's agent for that purpose.

The entry is:

Judgment vacated.

Case remanded to Superior Court for entry of judgment on Count III of plaintiff's complaint in the amount of $600 against

Richard Godin and for further proceedings consistent with the opinion herein.

All concurring.

---

6. The markings on defendant's exhibit #1, relied on by the court in rendering its judgment, indicate that the interior iron pin is located west of the pipe placed by Robert Godin at the location where he remembered the missing iron pin to be. The court, nevertheless, was apparently under the impression that the interior pin lined up with the missing iron pin and the spotted birch. In a subsequent written judgment, apparently prepared by the Godins and adopted by the court, the boundary extends from the spotted birch and passes in a straight line through the interior iron pin.