**HARBORVIEW CONDOMINIUM ASSOCIATION ***

v.

**Roland PINARD et al.**

Supreme Judicial Court of Maine.

Argued Sept. 20, 1991.

Decided Feb. 28, 1992.

C. Wesley Crowell (orally), Bernstein, Shur, Sawyer & Nelson, Kennebunk, John R. Kugler, Wells, for plaintiffs.

Harry B. Center, II (orally), Peter W. Schroeter, Smith & Elliott, Saco, for defendants.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD, and COLLINS, JJ.

* The Pinards are successors in interest to land previously owned by Ronald Berry and Dorothy Giroux, two of the original defendants in this action, and Harborview Condominium Association is the successor in interest to land previously owned by William and Susan Arms, the original plaintiffs in this action.

GLASSMAN, Justice.

The defendants, Roland and Eileen Pinard and Julian and Delian Lagueux, appeal from the judgment entered in the Superior Court (York County, *Brennan, J.*) affirming the judgment of the District Court (Springvale, *Gaulin, J.*) that established the location of the common boundary between land situated in Wells owned by the defendants and that owned by the plaintiff Harborview Condominium Association. We find no clear error in the District Court's location of the common boundary, and we affirm the judgment.

As designated on the sketch attached to this opinion as Appendix A, the Pinards are the owners of lots A and C and the Lagueuxs are the owners of lots B and D. The dispute is over the location of the eastern boundary of land owned by Harborview and the western boundary of the land owned by the Pinards and the Lagueuxs. By its complaint Harborview sought to establish that the location of the boundary was 130 feet westerly of the westerly boundary of Atlantic Avenue and also sought damages for the defendants' alleged trespass on property claimed by Harborview. The defendants filed an answer and a counterclaim for trespass. After a hearing, the District Court determined that "[t]he existing monuments (granite marker and iron pins) called for in the deeds for the Defendants 'rear' lots and as shown/depicted on various plans ... establish the location of the disputed line as being that asserted by Plaintiff." A judgment was entered accordingly with judgment for the defendants on Harborview's claim for damages. The Superior Court affirmed the judgment of the District Court, and the defendants appeal.

In boundary disputes "[w]hat the boundaries are, as ascertained from the language of a deed, is a question of law; where these boundaries are on the face of the earth is a question of fact." *Conary v. Perkins*, 464 A.2d 972, 975 (Me.1983); *see also Liebler v.*

*Abbott,* 388 A.2d 520, 521 (Me.1978) (quoting *Rusha v. Little,* 309 A.2d 867, 869 (Me.1973)); *Perkins v. Jacobs,* 124 Me. 347, 349, 129 A. 4, 5 (1925). The rule is well settled that the land of an adjacent owner is a monument, *see Edmonds v. Becker,* 434 A.2d 1012, 1013 (Me.1981), and "boundaries are controlled, in descending priority, by monuments, courses, distances, and quantity, unless this priority produces absurd results." *Theriault v. Murray,* 588 A.2d 720, 722 (Me.1991). "The physical disappearance of a monument does not end its use in defining a boundary if its former location can be ascertained." *Id.* Because the location of monuments is a question of fact, the trial court's findings as to such locations will not be disturbed on appeal unless they are clearly erroneous. *Ricci v. Godin,* 523 A.2d 589, 592 (Me.1987).

The Mathews family (Mathews) was the common grantor to the parties' predecessors in title. It is undisputed that the foundation deeds of the Pinards and the Lagueuxs predate that of Harborview. Mathews owned all the property of the parties at the time the western boundary of Atlantic Avenue was established in 1923. The location of that boundary is not disputed. Ten years later Mathews conveyed lot A (presently owned by the Pinards), described as having its beginning at a point on the westerly line of Atlantic Avenue and being a "tract of land which is fifty (50) feet on said Atlantic Avenue and extending westerly, holding the same width, a distance back of eighty (80) feet." Iron hubs were identified in the deed as marking the southeast, southwest and northwest corners of that lot.

In 1948, by two separate deeds, Mathews conveyed lot C (presently owned by the Pinards), a parcel presently 50 feet by 50 feet in dimension. The first deed described the conveyed property as follows:

> Beginning at the Northwesterly corner of [lot A], said corner being the Northeasterly corner of the land herein conveyed, thence running in a Northwesterly direction, and on the same course as the Northerly line of [lot A], Forty (40) feet; thence turning at a right angle and in a Southwesterly direction and running

Fifty (50) feet; Thence turning at right angle and in a Southeasterly direction and running Forty (40) feet to the Southwesterly corner of [lot A]; thence turning at right angle and running in a Northeasterly direction fifty (50) feet by [lot A] to the point of beginning.

The additional westerly 10 feet conveyed by Mathews the following month was described as:

> Beginning at the Northwesterly corner of other land of said grantee, and running in a Northwesterly direction, on the same course as the Northerly line of [lot A] and other land of said grantee, ten (10) feet; thence turning at right angle and running in a Southwesterly direction Fifty (50) feet; thence turning at right angle and running in a Southeasterly direction Ten (10) feet to the Southwesterly corner of other land of said Grantee; thence turning at right angle and running in a Northeasterly direction by other land of said Grantee Fifty (50) feet to the point of beginning.

A granite marker located at the southwest corner of lot C was acknowledged by the original grantee of Lot C to in fact mark the southwest corner of that lot. By reason of these three deeds to the Pinards' predecessor in title, the Pinards now own a single lot comprised of lots A and C. Every deed in the Pinards' title chain contains a description that is consistent with a finding that the Pinards own a lot beginning at the westerly boundary of Atlantic Avenue and running westward 130 feet. Accordingly, the trial court properly determined that the Pinards have no claim to land in the disputed area.

There is no dispute that the three iron hubs marking the southeast, southwest and northwest corners of lot A still existed in October 1962. Lot B (presently owned by Lagueux), identical in dimension to lot A, was conveyed by Mathews in 1947 and was described as follows:

> Beginning at the Northeasterly corner of [lot A], said corner being the Southeasterly corner of the land herein conveyed, and running in a Westerly direction by [lot A] Eighty (80) feet; thence turning

and running Northerly and Parallel with Atlantic Avenue, Fifty (50) feet; thence turning and running in an Easterly direction, and parallel with the first mentioned line, Eighty (80) feet to Atlantic Avenue; thence turning and running in a Southerly direction by Atlantic Avenue Fifty (50) feet to the point of beginning.

The Lagueuxs' claim to ownership of a portion of the disputed area arises from the distance calls in the deed description of lot D. They contend that such description establishes that their single lot, comprised of lots B and D, extends westerly 143 feet from the westerly boundary of Atlantic Avenue. In October 1957, Mathews by a single deed conveyed lots D and E to the original grantee of lot B.[1] In that deed, lot D was described as follows:

> Beginning at the Southwesterly corner of [lot B], and running thence Northerly 82° 18′ 30″ W. 12.73 feet to a pin in the ground, thence continuing in the same direction by [lot C] 50.11 feet to another pin in the ground at the Easterly side of a proposed street; thence turning and running Northerly along said proposed street 50.02 feet to a pin in the ground; thence turning and running easterly 53.67 feet, more or less, to a pin in the ground; thence continuing in the same direction 13.04 feet to the Northwesterly corner of [lot B]; thence turning and running Southerly fifty (50) feet by [lot B] to the Southwesterly corner thereof and the point begun at.

Lot E was described as:

> [b]eginning at the Northwesterly corner of [lot B] and running thence North 82° 18′ 30″ W. 13.04 feet to a pin in the ground; thence continuing in the same direction by [lot D] 53.67 feet to a pin in the ground at the Easterly side of a proposed Street; thence turning and running along said proposed street N. 8° 6″ E. 50.07 feet to a pin in the ground; thence turning and running Southeasterly 57.77 feet, more or less, to a pin in the

ground; thence continuing in the same direction 12.77′ to the Northwesterly corner of [lot F]; thence turning and running Southerly along the westerly side of [lot F], 50 feet to the point begun at.

The court had a duty to determine, if possible, the original location on the face of the earth of the pins referred to in the description of the Lagueuxs' lot D. If located, these monuments as a matter of law must prevail over the deed's course and distance calls. *Theriault v. Murray*, 588 A.2d at 722. Here, the trial court heard testimony by a surveyor that the pin referred to in the description of lot E as marking its northwest corner had been located in 1978. Further, through the location of the other established monuments, line directions and distances the surveyor was able to determine the location of the missing pins.

The court found that there was sufficient evidence "to accurately determine the location of the monumentation now missing and thus establish the location of the disputed line as being that asserted by the plaintiff." Accordingly, the court determined the common boundary to be a straight line extending from the granite marker at the southwesterly corner of the Pinards' lot C to the pin at the northwest corner of lot D. This boundary line is consistent with the depiction of the proposed street, referred to in the description of lot D, on two survey plans in evidence, one being an unrecorded plan drawn before the 1957 conveyance of lots D and E by Mathews and the other a plan drawn and recorded in 1978. It is also consistent with the eastern boundary of a sewer easement acquired in 1977 by eminent domain proceedings by the Wells Sanitary District from Harborview's predecessors in interest. The Lagueuxs, who were owners of lots B and D at the time, did not challenge this acquisition or the subsequent construction of the sewer. Because the trial court

---

1. Although the deed recited that it was given to correct "an error in the description of the premises conveyed to the grantees by deed dated Sept. 11, 1957", no such earlier deed was before the trial court nor was it pleaded by any of the parties to this action.

properly relied on monuments as established by the evidence to locate the common boundary between the lands owned by Harborview and by the Lagueuxs, we find no clear error in the court's determination.

The entry is:

Judgment affirmed.

All concurring.

**APPENDIX A**