STATE OF MAINE                                    SUPERIOR COURT
CUMBERLAND, ss.                                   CIVIL ACTION
                                                  Docket No. RE-03-78

                                                  TBD-Cum-

LITTLE OSSIPEE RIVER DEVELOPMENT,
LLC.

        Plaintiff,

        v.                                        DECISION AND ORDER

WHITE BROTHERS, INC.,

        Defendant.


        This case involves a boundary dispute between plaintiff Little Ossipee River

Development, LLC. and defendant White Brothers, Inc. If Little Ossipee is correct as to

the location of the boundary between its land and that of White Brothers, it owns

approximately 56 feet of frontage on Route 117 in Limington, enough to allow a

subdivision. If White Brothers is correct as to the location of that boundary, Little

Ossipee owns only some 22 feet of road frontage, below the 50-foot minimum necessary

to allow a subdivision.

        A bench trial was held on October 26-27, 2005, followed by a view requested by

both parties on November 4, 2005. Submission of post-trial briefs was concluded on

November 17, 2005.

        The following comprises the court's findings of fact and conclusions of law:


1.      Record Boundary

The Little Ossipee and White Brothers parcels were originally part of a larger parcel

owned by one Noah Randall[1] and divided by him in 1902. What is now the White

---

[1] In some of the relevant deeds, Randall is spelled "Randell."

Brothers parcel was conveyed by Randall to Herbert Berry by deed dated March 23, 1902, which described the parcel as follows:

> Beginning at the junction of the County Road leading over Edgecombs Bridge to North Hollis and the Maple Run Road (so called) lying on the Easterly side of the aforesaid County Road; thence by said Maple Run Road to the foot of the long meadow, running Southerly from near Smokey Cove so called, thence by the outlet of said Meadow Brook to Smokey Cove (so called), thence around by said Cove to a granite stone set on the Easterly side of said Cove, thence Easterly down the river by land of Nathan Smith to the Moses Sweat lot (so called), thence Southerly by said Sweat lot (so called) to the County Road above named, thence by said road to the place of beginning, containing seventy five acres, to be the same more or less.

Exhibit 5. The parties agree that the "County Road" referenced in White Brothers's chain of title is now Route 117.

Subsequently that same year, Randall conveyed several parcels, including what is now the Little Ossipee parcel, to the same grantee, Herbert Berry, by deed dated August 1, 1902. That deed described the Little Ossipee parcel as follows:

> Beginning at a point on the small inlet on the southerly side of Smokey Cove so called, thence by said inlet to the Maple Run Road, so called, thence by said Maple Run Road to the Waterboro and Limington town line, thence by said town line to the Bacon lot described by the second lot in deed of Noah Randell to Noah Randell Jr. recorded in book 261, page 226 of said Registry of Deeds, thence by said Bacon lot to a corner, thence to a point which was spotted Pine Tree northerly from said corner, thence easterly by said Bacon lot to the head of the Great Meadow, so called, thence northerly parallel to the above-named town line to the Little Ossipee River, thence by said river and by Smokey Cove to the point begun at, containing eighty acres more or less, reference being had to the John and A. Howard Chase deeds and to deed from me to Herbert L. Berry.

Pursuant to these deeds, the northern boundary of the White Brothers lot ran from the intersection of the County Road and the Maple Run Road "by said Maple Run Road" to the foot of a large meadow and over to Smokey Cove (an oxbow on the Little Ossipee River). The southern boundary of the Little Ossipee Lot ran "by said Maple Run Road" from an inlet on Smokey Cove to the Waterboro and Limington town line.

2

Maple Run Road therefore forms the record boundary between the Little Ossipee and White Brothers lots. The dispute in this case concerns the western end of the Maple Run Road, which can no longer be located on the face of the earth.

The parties essentially agree as to the existence and the location of the boundary as it moves west from Smokey Cove, where portions of Maple Run Road may still be discerned, until the line reaches a location approximately 400 feet east of the County Road. At that point the contentions of the parties and their respective surveyors diverge, with Little Ossipee contending that the line is far enough south to result in its ownership of 56 feet of road frontage along Route 117 and White Brothers contending that the line is more northerly, limiting Little Ossipee to 22 feet of frontage.

The parties also agree that Maple Run Road was a private road and that therefore deed language conveying land which runs "by said Maple Run Road" did not convey the road itself. Therefore, as of the 1902 deeds and at all times to the present, the heirs of Noah Randall retained ownership of the Maple Run Road, with Little Ossipee's parcel running along the northern edge of the Maple Run Road and the White Brothers parcel running along the southern edge of Maple Run Road. Little Ossipee has since purchased a fractional interest in Maple Run Road, which assures it of access to its property but does not affect the amount of its frontage on Route 117.

Subsequent to the original 1902 deeds, the Town of Limington acquired the White Brothers parcel by tax foreclosure, describing the northern boundary simply as "land formerly owned by S.S. Randell [sic]." Exhibit 16. Although the lot was subsequently conveyed by the town in 1934 and conveyed back to the town in 1971, the description remained unchanged until 1997, when the parcel was conveyed to White Brothers. At that time the northerly boundary of the parcel was described as follows:

3

> [A]long Route 117 to Maple Run Road, so-called, where the Limington-Waterboro town line as it exists on the date of this deed crosses Route 117, which point is also the southwesterly corner of land of Wolfriver Holding Corp . . . thence in a general easterly direction by Maple Run Road and land of Wolfriver.

Exhibit 27.

Although Little Ossipee purports to attach some significance to this language, the court does not find it to be significant. The northern boundary of White Brothers land is now set by both Maple Run Road and by the land of Wolfriver Holding Corp., a predecessor in title to Little Ossipee. But since the southern boundary of the Wolfriver/Little Ossipee parcel remains the Maple Run Road, there is no difference between the two for all practical purposes.[2]

As noted above and as not disputed by the parties, the western end of the Maple Run Road, which is the monument marking the record boundary, can no longer be located on the face of the earth. Nevertheless, it is well settled that the physical disappearance of a monument does not end its use in defining a boundary if its former location can be ascertained. Theriault v. Murray, 588 A.2d 720, 722 (Me. 1981). Indeed, the court has a duty to determine the original location of the monuments if it is possible to do so. Id. Accord, Harborview Condominium Association v. Pinard, 603 A.2d 872, 876 (Me. 1992); Ricci v. Godin, 523 A.2d 589, 592 (Me. 1987).

In this instance, the court finds that it is more likely than not that the Maple Run Road was located along the line described in the Dostie survey and shown on that survey as the northern boundary of the White Brothers lot. Exhibit 61. The court makes this finding after considering all the evidence but places particular importance on the 1940 and 1947 aerial photographs. The court finds it is more likely than not that the

---

[2] The only discrepancy is that Little Ossipee's southern boundary stops at the northern edge of the Maple Run Road. To the extent that the Town was purporting to convey the roadbed of the Maple Run Road to White Brothers, however, it could not convey what it did not own.

road that can be seen on those photographs in the area of the boundary between the Little Ossipee lot and the White Brothers lot is the Maple Run Road.[3] Moreover, the intersection of that road with Route 117 is almost directly opposite the entrance to a tote road leading from Route 117 to Isinglass Pond – a tote road which exists in the same location today. The court finds, therefore, that the former location of the intersection of the Maple Run Road and Route 117 is almost directly opposite the road to Isinglass Pond as shown on Exhibit 61.

In reaching this result, the court has considered plaintiff's arguments as to the unreliability of aerial photographs. First, such photographs are not unreliable as a matter of law. See, e.g., Zemero Corp. v. Hall, 2003 ME 111 ¶ 8, 831 A.2d 413, 415 (affirming findings based on aerial photographs). Second, the court finds, having considered the testimony of both surveyors and the surveying treatise relied upon by plaintiff's counsel in his cross-examination of Dostie, that any imprecision in the use of aerial photographs would not be material to the result here. The treatise relied upon by plaintiff's counsel refers primarily to the difficulty of making accurate measurements from aerial photographs. In this case the court is not relying on any measurements derived from aerial photographs but is relying on the juxtaposition shown on the photographs between the former entrance of Maple Run Road and the entrance to the road of Isinglass Pond.

Given that the court has found that the record boundary is as depicted by the White Brothers survey, the court must address plaintiff's arguments that a different boundary has been established by agreement, by practical location, or by acquiescence.

---

[3] The court's recollection is that plaintiff's surveyor, Robert Yarumian, agreed with this in his testimony. Even if he did not, the court finds this to be more likely true than not.

## 2.    Boundary by Agreement, Practical Location or Acquiescence

Little Ossipee argues that notwithstanding the record boundary, a boundary giving it at least 50 feet of road frontage, as shown on the Yarumian survey, has been established either by agreement, or by practical location, or acquiescence.

There may be some uncertainty as to the difference between a claim that a boundary has been established by agreement and a claim that a boundary has been established by practical location. At least one Law Court case can be read to suggest that boundary by agreement and boundary by practical location are different theories. See Steinherz v. Wilson, 1998 ME 22 ¶ 8 n.5, 705 A.2d 710, 712 n.5 (finding a boundary by agreement while noting that the court below had rejected a claim of boundary by practical location). On the other hand, another Law Court case seems to equate the two. Calthorpe v. Abrahamson, 441 A.2d 284, 288 (Me. 1982) (referring to the "rule of practical location by parol agreement").

Treating the two as separate doctrines, as does Little Ossipee, the court concludes that Little Ossipee has not met its burden of showing by a preponderance of the evidence that a boundary exists in the disputed area along the line proposed by Yarumian either by agreement or by practical location. For a boundary to exist by parol agreement, there must at a minimum have been an agreement between the owners of adjoining lands to settle the location of a disputed boundary. Steinherz, 1998 ME 22 ¶ 12, 14, 705 A.2d at 713. No evidence was offered that any boundary agreements were ever reached between Little Ossipee and White Brothers or between any of their

6

predecessors in title, and the court finds on this record that no such agreement was ever reached.[4]

For a boundary to exist by practical location, some understanding or agreement between adjoining owners is also required. See Calthorpe, 441 A.2d at 288, quoting H. Skelton, The Legal Elements of Boundaries and Adjacent Properties § 322 at 362-63 (1930):

> Where adjoining owners deliberately erect monuments, fences, or make improvements on a line between their lots on the understanding that it is the true line, it amounts to a practical location . . .

In distinguishing boundary by practical location from boundary by acquiescence, the Law Court in Calthorpe emphasized that agreement is required for a boundary by practical location to exist:

> The distinguishing feature of acquiescence [as opposed to practical location] is that proof of an agreement to locate and fix a boundary on a certain line is not required.

Id. (citation omitted). The absence of sufficient proof of an agreement, therefore, precludes Little Ossipee's claims that a boundary has been established by practical location.

Little Ossipee's third theory is boundary by acquiescence. A party relying on the establishment of a boundary by acquiescence must prove, by clear and convincing evidence, all of the following:

> (1) possession up to a visible line marked clearly by monuments, fences, or the like; (2) actual or constructive notice to the adjoining landowner of the possession; (3) conduct by the adjoining landowner from which recognition and acquiescence not induced by fraud or mistake may be fairly inferred; (4) acquiescence for a long period of years such that the policy behind the doctrine of acquiescence is well-served by recognizing the boundary.

---

[4] The court therefore does not need to consider whether the other elements of boundary by parol agreement have been met – such as the existence of a dispute preceding the agreement and subsequent marking of the agreed boundary. See Steinherz, 1998 ME 22 ¶ 12, 705 A.2d at 713.

Calthorpe, 441 A.2d at 289.

With respect to the disputed area, the court concludes that Little Ossipee has failed to prove the first element – possession up to a visible line marked clearly by monuments, fences, or the like. As noted above, the dispute in this case concerns the western end of the boundary line. At the eastern end of the boundary line the remnants of the Maple Run Road can be discerned. This portion of the boundary runs from approximately the point marked L14 to the point marked L21 on Exhibit 61. Moving westward from L14 on Exhibit 61, the boundary runs along a ridge or berm of earth which appears to have been created in the course of gravel pit mining operations on both sides of the boundary. This man-made ridge, unlike the land on either side of it, is covered by trees and other vegetation. It rises a number of feet above the land on either side of it and generally follows the course of the Maple Run Road as that road has been depicted on Exhibit 61.

The discernable man-made ridge, however, does not extend all the way to Route 117 but stops approximately 300 feet short of Route 117. Between the end of the ridge and Route 117, there are some random hillocks and mounds, but these are not oriented in any one direction. There is also a ragged area of trees and vegetation that continues from the end of the ridge to Route 117.

As noted above, only the western end of the boundary – for a length of approximately 400 feet from Route 117 – is in dispute in this action. Little Ossipee's surveyor proposes that the length of the discernable ridge, which generally runs along the line of Maple Run Road as located by White Brothers's surveyor, constitutes a boundary by acquiescence. The court need not decide if this is correct because there is no dispute as to the boundary in the area where the ridge is discernable. Little Ossipee

8

contends, however, that there is also a boundary by acquiescence in the disputed area once the ridge peters out and is no longer discernable. In this area, Little Ossipee's proposed line follows to the end of the contour lines on Exhibit 61 and then proceeds through the middle of the area of vegetation to Route 117.[5]

Once the discernable ridge peters out, however, the court finds that there is no definite boundary that is discernable and that this is especially true for the last 300 feet between the approximate end of the contour lines shown on Exhibit 61 and the road. White Brothers and its predecessors in title "cannot acquiesce in a boundary that they cannot identify with certainty." Calthorpe, 441 A.2d at 290. Accord, Taylor v. Hanson, 541 A.2d 155, 159 (Me. 1988).[6]

Since Little Ossipee has not met its burden of proof by clear and convincing evidence with respect to the first element of its boundary by acquiescence claim, the court need not consider whether it has met the other elements of that theory. The court therefore determines that the disputed boundary is as shown on Exhibit 61.

3.    Little Ossipee's Access Rights Over Maple Run Road

Although Little Ossipee's record title, derived from the original August 1902 conveyance by Noah Randall, ends at the northern edge of the Maple Run Road, White Brothers does not contest that Little Ossipee is entitled to access its property over the former entrance of Maple Run Road for three reasons. The first is that Little Ossipee has an easement by implication. The second is that it has a quasi-easement to use the

---

[5] In contrast, the record boundary as determined by the surveyor for White Brothers diverges north from the line of highest elevation on Exhibit 61's contour lines approximately 100 feet before the contour lines end and eventually follows a line generally bordering the northern edge of the area of vegetation to Route 117 at a point opposite the entrance of the tote road to Isinglass Pond.

[6] For this reason, the court need not decide whether as a matter of law a man-made ridge can constitute the kind of "structure commonly used to create a boundary line" that is necessary for a claim of boundary by acquiescence. See Crosby v. Baizley, 642 A.2d 150, 154 (Me. 1994).

9

area where its driveway is now located and where the entrance to Maple Run Road formerly existed. The third reason is that Little Ossipee has recently purchased an undivided 1/24 interest in the Maple Run Road from the heirs of Noah Randall.

4.    Little Ossipee's Trespass Claims

Given that Little Ossipee had an easement by implication or a quasi-easement over Maple Run Road at all relevant times, the temporary placement by White Brothers of concrete barriers blocking Little Ossipee's current entrance road constituted a trespass. Those barriers have since been removed by White Brothers, however, and the court does not find that Little Ossipee has proven any damages as a result of the trespass. In particular, while Little Ossipee's post-trial brief references 14 M.R.S.A. § 7551-B, that section applies only to one who enters the land of another without permission and damages any fence, road, ditch, culvert, or other structure or discards or deposits litter. White Brothers neither damaged any structure nor disposed of any litter, and 14 M.R.S.A. § 7551-B is inapplicable.

Finally, given its understanding of the boundary at the time it placed the concrete barriers, White Brothers acted with neither malice nor the necessary outrageousness to warrant an award of punitive damages. As a result, Little Ossipee is entitled only to nominal damages for the trespass committed by White Brothers.

The entry shall be:

Judgment is entered (1) declaring that the boundary between the land of plaintiff and the land of defendant shall be as shown on Trial Exhibit 61, (2) declaring that plaintiff has the right to access its property by the former entrance to Maple Run Road based on an easement by implication or a quasi-easement, and based on its ownership of an undivided 1/24 interest in Maple Run Road, and (3) awarding nominal damages

10

of $1.00 to plaintiff for trespass. If counsel for defendant wishes to submit a more detailed judgment, counsel may do so within 10 days in the form of a motion to alter or amend. The clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: November 28, 2005

Thomas D. Warren
Justice, Superior Court

11

**CLERK OF COURTS**
Cumberland County
P.O. Box 287
Portland, Maine 04112-0287

Def.

JOTHAM PIERCE, ESQ.
1 MONUMENT SQUARE
PORTLAND, ME 04101

**CLERK OF COURTS**
Cumberland County
P.O. Box 287
Portland, Maine 04112-0287

P.

JOHN BANNON, ESQ.
PO BOX 9785
PORTLAND, ME 04104-5085