364-12

STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
Docket No. RE-11-607

PETER DOREY,

       Plaintiff

v.

ORDER

JAY CUMMINGS, et al.,

       Defendants

STATE OF MAINE
Cumberland, ss, Clerk's Office

NOV 2C 2012

RECEIVED

A one-day bench trial was held in the above-captioned case on November 13, 2012 with plaintiff Peter Dorey represented by counsel and defendant Jay Cummings representing himself.[1]

Although there are several issues in the case, the major dispute between the parties concerns the western boundary of a lot owned by Cummings (variously referred to as the "Park Lot" or Lot 20), as it borders on a woodlot owned by Dorey. Both parcels of land are located in Bridgton to the west of the Fosterville Road and to the north of a woods road known as the Old Harmon Road.

The court makes the following findings of fact and conclusions of law:

1. The controlling property description in this case is that originally contained in a 1947 deed from Edith Durfee to Adelbert and Ethel Wentworth (JX 8), which created the "Park Lot."

2. To the extent that property description in the 2005 deed from Elizabeth Wenthe to defendant Cummings (JX 2) differs from the description in the 1947 deed to the Wentworths, Ms. Wenthe could not convey land that she did not own.

---

[1] The remaining defendant was dismissed prior to trial.

3. The 1947 deed describes the Park Lot (the property eventually owned by Cummings) as follows:

> Commence at a point on the westerly side of [the Fosterville] road opposite a telephone pole near the corner of the old cellar of the Harmon homestead, thence Westerly to a spotted yellow birch tree; thence southerly to twin elms spotted on the northerly side of the old Harmon road; thence Easterly by said Harmon road to land of Wallace Chase, and thence Northeasterly by said Chase land to said Fosterville Road to the point of commencement and bound first mentioned, containing two acres more or less.

4. The problem in this case is that the current location of the "spotted yellow birch tree" that existed in 1947 is uncertain, and there is no trace of the "twin elms" on the northerly side of the old Harmon Road. Those are the monuments of the northwest and southwest corners of the land owned by Cummings, which are the disputed locations in this case.[2]

5. In construing deeds, boundaries are controlled, in descending order of priority, by monuments, courses, distances, and quantity unless this priority produces absurd results. *E.g., Theriault v. Murray*, 588 A.2d 720, 722 (Me. 1991). The physical disappearance of a monument does not end its use in defining a boundary if its former location can be ascertained. The court has a duty to determine the original location of monuments if it is possible to do so. *Id. Accord, Ricci v. Godin*, 523 A.2d 589, 592 (Me. 1987).

7. The northwest corner of the Park Lot actually no longer belongs to Cummings because that portion of the Park Lot has been sold to Christopher Cloutier. However, the location of the northwest corner is important because it remains one of the two points setting the boundary line that is in dispute in this case.

---

[2] The northeast and southeast corners of the Cummings property are not disputed and need not be addressed.

2

8. With respect to the northwest corner of the Park Lot, it is possible to locate several birch trees, but there is a question whether either the birch tree located in the 2005 Farthing survey or the birch tree located in the 2011 Sawyer survey was in existence in 1947 or was the "spotted yellow birch tree" referred to in the 1947 Wentworth deed.[3] A "latent ambiguity" exists when it is unclear how to apply a deed description to the facts on the ground, and extrinsic evidence may be used to resolve a latent ambiguity. *E.g., Taylor v. Hanson*, 541 A.2d 155, 157-58 (Me. 1988).

9. Parol evidence from Dorey, based on his 1983 boundary walk with Charles Miller (one of Cummings's predecessors in title), established that a metal bar had been placed in the ground near to the location of the yellow birch. See M.R. Evid. 803(20). Dorey placed yellow paint on that bar during his boundary walk with Miller, and both Farthing and Sawyer found a metal rod with yellow paint in that approximate location. Accordingly, the court determines that it is more probable than not that the yellow-painted rod shown on both the Farthing and Sawyer surveys marks the original location of the spotted yellow birch at the northwest corner of the Park Lot.

10. With respect to the southwest corner of the Park Lot, the court cannot accept the Farthing survey relied upon by Cummings (JX 15) because that survey sets the southwest corner of the Park Lot based on a red painted iron pipe which is not mentioned in the 1947 deed to Wentworth. There is no evidence that the red painted iron pipe was placed to mark the location where the "twin elms" referred to in the 1947 Wentworth deed had previously stood. As far as the court can tell, Farthing found an iron pipe with red paint and simply assumed that it was intended to mark the southwest corner of the Park Lot.

---

[3] There was evidence that the larger birch tree (found by Sawyer) was a more likely candidate. However, the Nadeau report (JX 19, page 2) suggests that it is doubtful that either of those trees were the designated monuments.

11. Apart from its reliance on a monument that is nowhere mentioned in the controlling deed, Farthing's survey is not based on courses, distance, or quantity. Indeed, Farthing's proposed boundary would give the Park Lot a total size of 3.79 acres – almost double the "two acres more or less" given as the original size of the Park Lot.

12. Farthing conceded that his determination of the western boundary of the Park Lot was uncertain because he recommended to Ms. Wenthe that that line be determined by agreement with Dorey and corrective deeds written. JX 16.

13. As a result of Farthing's uncertainty, Wenthe's deed to Cummings (JX 2) describes the western boundary of the property conveyed as running "along land of Dorey and a proposed line of agreement" (emphasis added), demonstrating that Cummings was aware of the uncertainty with respect to that boundary when he bought his property. No agreement was ever reached.

14. In the absence of any evidence on the ground of the monument marking the southwest corner of the Park Lot, the Sawyer survey (JX 17) – following the rule that monuments, courses, distances, and quantity set the order of priority – interprets the 1947 deed reference "thence southerly to twin elms spotted on the northerly side of the old Harmon road" to establish that the boundary should follow a line drawn due south (magnetic) from the northwest corner of the property until that line intersects the old Harmon Road. The problem with this interpretation is that "southerly" denotes a general direction rather than a specific course.[4]

15. The Sawyer survey does result in a quantity (2.1 acres) that is close to the "two acres more or less" specified in the 1947 Wentworth deed. However, "two acres more or less" does not alone provide a basis to determine the placement of the

[4] In the absence of any better evidence, the court might be obliged to interpret "southerly" as due south in order to resolve the boundary but, as noted below, there is extrinsic evidence that allows the court to determine the former location of the twin elms.

4

southwest corner of the Park Lot so long as that location results in a total acreage of approximately two acres.

16. Given the absence of the twin elms, the uncertainty of a "southerly" course, and the uncertainty of "two acres more or less", the court concludes a latent ambiguity also exists with respect to the southwest corner. That ambiguity can be resolved by extrinsic evidence based on Dorey's 1983 boundary walk with Charles Miller. A galvanized pipe that Miller identified as the former location of the twin elms (and that Dorey marked with yellow paint in 1983) can no longer be located. However, Dorey's testimony with respect his boundary walk with Miller leads the court to determine that is more probable than not that the galvanized iron pipe – marking the original location of the twin elms – was located slightly to the east of where the remnants of an old canal cross the old Harmon Road. This is consistent with where Dorey placed the boundary on the sketch admitted in evidence as DX 6A. Although it will result a Park Lot that is greater in size than two acres, it will be considerably closer to "two acres more or less" than the 3.79 acres sought by Cummings.

17. Given the above finding, the court does not have to reach Dorey's argument that the western border of the Park Lot can alternatively be determined by clear and convincing evidence under a "boundary by acquiescence" theory. *See, e.g., Anchorage Realty Trust v. Donovan*, 2004 ME 137 ¶7 11-12, 880 A.2d 1110. However, it appears that if Dorey could prevail on a boundary by acquiescence theory, that theory would yield the same boundary that the court has found by determining the most likely location of the original monuments in the 1947 Wentworth deed.

18. In reaching the above findings, the court is aware that certain hearsay evidence was admitted without objection, and it evaluated that evidence in light of its hearsay nature.

5

19. Dorey is seeking damages against Cummings based on a cause of action for trespass. However, there was no evidence that Cummings ever entered onto the property that is in dispute or damaged that property in any way. In addition, the damages that Dorey is seeking principally consist of his expenses in obtaining his own surveys. The court is not aware of any authority for the proposition that a party litigating a boundary dispute can recover survey costs under a trespass theory.

20. The remaining issue is whether Dorey has established a prescriptive easement to travel over the portion of the Old Harmon Road owned by Cummings. It is not disputed that Cummings owns up to the centerline of the Old Harmon Road along the southern boundary of the Park Lot.[5]

21. To prove a prescriptive easement, a party must show (1) continuous use for at least 20 years (2) under a claim of right adverse to the owner (3) with the owner's knowledge or acquiescence or with a use so open, notorious, visible or uninterrupted that knowledge and acquiescence will be presumed. *Androkites v. White*, 2010 ME 133 ¶ 14, 10 A.3d 677.

22. In this case Dorey testified that he estimates he has used the old Harmon Road twice a year since 1983 and that he has used a backhoe to repair portions of the road where other drivers have gotten stuck over the years. At least some of those repairs may have been performed on the portions of the Old Harmon Road that border the southern boundary of the Park Lot, but that is not entirely clear from the record.

23. Another user of the road, the landowner who owns the property west of Dorey's woodlot (Tom Gyger) also uses the road and has within the past five or six

---

[5] Since Dorey can walk along the Old Harmon Road without crossing the centerline onto the Cummings property, the issue in dispute is whether he has a prescriptive easement to travel along the southern boundary of the Park Lot in a vehicle large enough to cross the centerline.

years placed a partial telephone pole barrier across the Old Harmon Road in order to limit use of the road to small vehicles, principally snowmobiles and ATVs.[6]

24. Even assuming that Dorey's occasional use of the Old Harmon Road has been sufficiently continuous to meet the first prescriptive easement prong under *Androkites*, the above evidence is not sufficient to establish the third prong — that Dorey's use of the road was with the owners' knowledge or acquiescence or was so open, notorious, visible or uninterrupted that the knowledge and acquiescence of Cummings and his predecessors in title can be presumed.

Because of the possibility that the judgment resolving the boundary in this case will need to be filed in the Registry of Deeds, the court will order that counsel for Dorey submit a proposed judgment suitable for that purpose.

The entry shall be:

The court determines and declares that for purposes of determining the boundary of the property owned by defendant Cummings, the northwest corner of the Park Lot (Lot 20) is located at the 1" iron rod or stake painted yellow shown as the northwest corner of Lot 20 on JX 15 and the southwest corner of the Park Lot is located just to the east of the location where the remnants of the canal cross the Old Harmon Road.

On plaintiff's claim that he has a prescriptive easement to pass over the portion of the Old Harmon Road that is owned by defendant Cummings, the court determines that plaintiff has failed to prove the existence of a prescriptive easement.

On plaintiff's claim for trespass damages, judgment is entered for defendant Cummings.

Since both parties have prevailed to a certain extent, neither party shall be entitled to costs.

Plaintiff shall submit a proposed final judgment on the boundary issue within 14 days of the entry of this decision. Defendant shall have 7 days in which to file any objections to the proposed form of judgment. The Clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

---

[6] Dorey is able to drive around the telephone pole barrier on his tractor.

Dated: November 19, 2012

_____
Thomas D. Warren
Justice, Superior Court

STATE OF MAINE                                    SUPERIOR COURT
CUMBERLAND, ss.                                   CIVIL ACTION
                                                  Docket No. RE-11-607

STATE OF MAINE
Cumberland, ss, Clerk's Office

JUN 2 6 2012

RECEIVED

PETER DOREY,

        Plaintiff

v.                                                ORDER

JAY CUMMINGS et al.,

        Defendants


        Before the court is plaintiff Peter Dorey's motion for judgment on the pleadings

against defendant Jay Cummings. The other defendant in this action is Christopher

Cloutier. Cloutier has answered, has asserted a counterclaim against Dorey, and has

asserted a cross claim against Cummings.

        The gravamen of Dorey's motion is that Cummings, who is representing himself,

originally filed a response to the complaint that did not comply with M.R.Civ.P. 8(b) in

that it contested Dorey's claims but did not specifically admit or deny the averments in

the complaint. Accordingly Dorey argues, judgment should be granted on the pleadings

as against Cummings.

        In response to Dorey's motion Cummings filed an objection along with an

amended answer, "hopefully conforming with Rule 8(B)." Dorey's reply memorandum

asserts that the amended answer should be disregarded because Cummings did not file

a motion for leave to amend pursuant to Rule 15(a). Dorey does not, however, offer any

argument why – if Cummings's response were construed as a motion for leave to

amend – that motion should not be granted.  Rule 15(a) in fact specifically states that

leave to amend shall be freely given when justice so requires.

Dorey is quite right that unrepresented parties are expected to comply with the Rules of Civil Procedure and are not entitled to preferential treatment. At the same time it is not an infrequent occurrence that parties represented by attorneys fail to strictly comply with the Rules of Civil Procedure. If the court would not penalize represented parties for such violations – because there has been no prejudice to their opponents and because the violations do not involve serious procedural defects under the specific circumstances in question – it should not treat unrepresented parties more harshly.

In this case there are at least three reasons why the court concludes that plaintiff's motion for judgment on the pleadings should not be granted:

1. As far as the court can tell from the pleadings, Dorey's claim against Cummings involves the exact same land and the exact same causes of action as Dorey's claim against Cloutier. Indeed, it appears that Cummings sold the land in question to Cloutier. This means that regardless of plaintiff's claim against Cummings, he will have to continue litigating the same issues against Cloutier in order to obtain the relief he seeks. Under these circumstances the court sees very little point in effectively defaulting Cummings, since Cloutier would not be bound by any ruling against Cummings and since Cummings appears likely to constitute a necessary witness in any case.

2. Arguably, since Dorey contends that Cummings's original answer did not constitute a valid pleading, Dorey's proper course of action would have been to move to strike that pleading because it did not comply with Rule 8(b) and then, if that motion had been successful, to seek a default against Cummings. If plaintiff had made such a motion, however, that motion would almost certainly have been granted without prejudice to the prompt filing of an answer that did comply with the rules. The court

2

cannot see why Dorey's current reliance on the technicalities of Rules 8(b) and 15(a) should yield a different result.[1]

3. The relief that plaintiff is seeking, as noted above, is effectively a default judgment against Cummings. However, the Law Court has suggested that, when a party has appeared and is prepared to litigate the issues, only "serious instances of noncompliance with pretrial procedures" should lead to a default. <u>Design Build of Maine v. Paul</u>, 601 A.2d 1089, 1091 (Me. 1992). The situation now before the court does not present a serious instance of noncompliance with pretrial procedures.

At the same time, Cummings should be on notice that he must comply with the Rules of Civil Procedure, that unless he obtains counsel he is likely to be at a serious disadvantage in this case,[2] and that if any of the other parties to this action can demonstrate in the future any significant procedural defect on Cummings's part, particularly if it results in prejudice to them, the court will apply the rules of civil procedure notwithstanding Cummings's unrepresented status.

The entry shall be:

Plaintiff's motion for judgment on the pleadings against defendant Cummings is denied, and Cummings is granted leave to file his amended answer dated April 4, 2012. The Clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: June 25, 2012

Thomas D. Warren
Justice, Superior Court

---

[1] The court would reach the same conclusion if Cummings were represented by counsel.

[2] For instance, the court notes that Cloutier's cross claims seek money damages against Cummings if Dorey prevails as against Cloutier.

--------------------------------------------------------------------------

01 0000003307          PAZAR, CHRISTOPHER
    ONE MONUMENT WAY PORTLAND ME 04101
    F      CHRISTOPHER J CLOUTIER                    DEF        RTND      01/12/2012


02 0000008874          FRIEDMAN, MICHAEL G
    132 MAIN STREET PO BOX 10 BRIDGTON ME 04009
    F      PETER M DOREY                             PL         RTND      12/19/2011